## WATSON *v.* WATSON.

[No. 5,588.   Filed March 30, 1906.]

1. DIVORCE.—*Alimony.*—*Question for Court.*—The amount of alimony in a case of divorce is a question for the court, reviewable only in cases of abuse of discretion.   p. 551.

2. CONTRACTS.—*Antenuptial.*—*Validity.*—Antenuptial contracts, free from fraud or imposition, and not against public policy, are enforceable.   p. 551.

3. HUSBAND AND WIFE.—*Husband's Duty of Support.*—The husband is charged with the legal duty of supporting his wife to the extent of his ability.   p. 551.

4. CONTRACTS.—*Antenuptial.*—*Fixing Amount of Alimony.*—*Public Policy.*—An antenuptial contract providing that upon separation for any cause the husband shall pay the wife $200 in settlement of all liability for alimony is contrary to public policy and void.   p. 552.

5. DIVORCE.—*Alimony.*—*Decree.*—*Effect.*—A decree of divorce necessarily settles both the marital and the property rights of the parties thereto.   p. 553.

From Warren Circuit Court; *Joseph M. Rabb,* Judge.

Suit by John Watson against Rachel Watson.   From a decree for defendant on her cross-complaint, plaintiff appeals.   *Affirmed.*

*James McCabe* and *Edwin F. McCabe,* for appellant.

*C. V. McAdams* and *W. S. Potter,* for appellee.

MYERS, J.—This is a suit for a divorce instituted by appellant against appellee upon the ground of cruel and inhuman treatment.   Appellee answered in general denial. She also filed a cross-complaint charging appellant with cruel and inhuman treatment, and averring that while appellant and appellee lived together as husband and wife she was compelled to clothe herself, furnish the house, and has paid to appellant $700 in cash, of her own money, which he still holds, and demanding a divorce and alimony.   Appellant answered the cross-complaint by denial.   Trial by the court; finding and decree for appellee upon her

cross-complaint and against appellant upon his complaint. Appellee was granted a divorce, $600 alimony and $100 attorneys' fees. Appellant's motion to modify the decree and his motion for a new trial were each overruled and exceptions reserved.

The errors assigned question each of these rulings of the court, and, as presented by appellant, but one question is here for our decision, namely, the effect of an antenuptial contract on the question of alimony.

This contract is of considerable length, consequently we will only refer to so much thereof as will fairly present the question here to be decided. The contract was executed August 2, 1901. By this contract appellant agreed to marry appellee and support her and provide her with all the necessary home comforts reasonably due from a husband in his financial position, and in case of death, leaving appellee surviving him, to provide her with dower in real estate of the value of from $1,500 to $2,000 for her use and occupancy during her life, without the power of alienation. Appellee agreed to these stipulations and on her part to contribute annually during the life of the parties to this contract "the sum of $150 to the use and support of the home and family of this marriage, out of and from the annual dower and heritage received by her from her mother's estate. The annual balance thereof, to wit, $150, shall be retained by her to use and invest as she shall please." Then follows a provision with reference to children born of such marriage and children of said Watson by former marriages. Said contract further provides:

"That in case the parties hereto shall fail to agree, and shall, for any cause, separate and continue to live separate and apart, then and in that case each party hereto shall forfeit all claims and benefits of this contract, and shall not take any claim, interest nor right to and in the separate property of the other, either in the lifetime of the parties or at the death of either of said party hereto: Provided, that no such separation

shall exclude children born to this marriage from equal heirship in the estate of said Watson, and provided further that in case of separation of the parties hereto, for any cause whatsoever, said Watson shall, at the time of the separation, pay to said Downs the sum of $200, and afterwards annually contribute a reasonable sum to the clothing of any children that shall be born to their marriage."

Appellant insists that $200 is the limit of his liability to appellee in case of a separation for any cause, and that the decree should be modified so that the amount of appellee's recovery for alimony shall not exceed that sum. Also that a judgment for any greater sum is contrary to law and contrary to the evidence. We have carefully read all the evidence in the record, and in our opinion it is sufficient to support the action of the court in granting appellee a divorce.

A few features of this case which the evidence tends to establish we here exhibit: The parties were married August 2, 1901, and separated in August, 1904. At the time of the trial of this cause appellant was sixty-two and appellee forty-two years of age. Appellee was a cripple, and had been since she was eleven years of age, which appellant well knew at the time of their marriage. Appellee at the time of her marriage with appellant, under the will of her mother, had an annual income or annuity of $300 secured by a lien upon certain real estate, which lien was junior to a mortgage of $4,600. After her marriage with appellant she sold for $1,250 her right to such annuity to the owners of the land and the parties charged with the payment of the same. She received on account of delinquent payments the sum of $466.50. Of this total sum she had left, at the time of granting the divorce, $550, evidenced by two notes, one for $500 given by her father, with one of her brothers as surety, and the other given by one of her brothers, and this was all the property owned by her. The balance she had expended in the way of repayment to

appellant sums of money he had advanced to her and interest on such advancements, and for her support in the way of clothing, medicine and furniture for the dwelling in which they lived, and the annual payment of $150 by her to be paid to him, as provided in said antenuptial contract. Appellant's financial worth is from $6,000 to $7,000 over and above his liabilities.

By eliminating the antenuptial contract, the circumstances of this case clearly authorized the allowance of alimony as fixed by the trial court. The amount of such allowance is largely within the discretion of such court, and it is only in cases where it plainly appears that this discretion has been abused that an appellate tribunal will interfere. *Yost* v. *Yost* (1895), 141 Ind. 584; *Gussman* v. *Gussman* (1895), 140 Ind. 433; *Stutsman* v. *Stutsman* (1903), 30 Ind. App. 645; *Breedlove* v. *Breedlove* (1901), 27 Ind. App. 560.

If we should adopt appellant's construction of the antenuptial contract it would be in effect affirming a rule of law authorizing parties contemplating marriage to fix in advance the husband's liability for alimony in case either shall obtain a divorce. This we can not do. While the law in this State is firmly fixed giving parties the right to adjust and settle property interests by antenuptial contract (*Leach* v. *Rains* [1897], 149 Ind. 152; *Kennedy* v. *Kennedy* [1898], 150 Ind. 636), and to have such settlement recognized and enforced by the courts, yet such settlement must be free from fraud or imposition (*Kennedy* v. *Kennedy, supra*), and not against public policy (*Neddo* v. *Neddo* [1896], 56 Kan. 507, 44 Pac. 1).

It is also equally well settled that the husband is bound to support his wife. *Rariden* v. *Mason* (1903), 30 Ind. App. 425; *Scott* v. *Carothers* (1897), 17 Ind. App. 673. This legal obligation is a part of every marriage contract. It is a duty imposed upon the husband by law, and from this obligation he can not shield

himself by contract. To hold otherwise would be to invite disagreement, encourage separation, incite divorce proceedings and commend a principle which would be a menace to the welfare of society, contrary to public policy, and tending to overthrow and destroy every principle of the law of marriage requiring that husband and wife shall live together during their natural lives, and that the husband, within his financial ability, shall furnish the wife with reasonable necessaries for her support and home comforts in sickness and in health, as by law he is required to do. In *Neddo* v. *Neddo, supra,* the court well said: "No marriage settlement ought to be upheld which invites or encourages a violation of the marriage vows. * * * By the abandonment of the wife in violation of the law of marriage, it was in effect stipulated that the guilty party should be relieved from the duty of support which that law enjoins. A contract which incites, by the hope of financial profit, the separation of married people should not be enforced."

The case at bar furnishes a good illustration where a settlement under the contract would be an incentive to a separation strongly appealing to a mercenary person. For, at no late day, under the facts here exhibited, the duty of supporting a crippled wife must fall entirely upon the husband. By the payment of the insignificant sum of $200 he would be relieved from that duty and his estate additionally benefited by a cancelation of the dower stipulation in the agreement. Such a contract is contrary to public policy and can not be enforced. We must not be unmindful of the fact that the public have an interest in causes of this character aside from the parties, and for this reason the question of alimony is a matter for the court, and not a subject of agreement between the parties whereby the action of the court is to be controlled.

A decree of divorce not only terminates the marital obligation, but, from the nature of the litigation, property

rights growing out of the marriage relation are necessarily included in such proceedings and there settled. This rule applies.to all cases alike, regardless of any contract the parties in contemplation of marriage may have made. *Behrley* v. *Behrley* (1884), 93 Ind. 255; *Rose* v. *Rose* (1884), 93 Ind. 179; *Hills* v. *Hills* (1884), 94 Ind. 436; *Nicholson* v. *Nicholson* (1888), 113 Ind. 131.

There is no error in the record. Judgment affirmed.