# Richmond.

## CUMMING V. CUMMING.

### March 18, 1920.

1. DIVORCE—*Desertion—Justification—Case at Bar.*—In an action
   for divorce by a wife for desertion, the husband answered alleg-
   ing cruelty on the part of the wife and praying that a divorce
   be awarded him on- that ground. The conduct of the wife did
   not originally cause the separation, nor did it in any way cause
   its continuance. The separation and its continuance was
   wholly due to the wilful desertion of the wife by the husband,
   and would have existed, just as it did, had the conduct of the
   wife been blameless.

   *Held:* That as a justification for the desertion by the husband,
   the conduct of the wife must be disregarded; and, that the
   desertion on the part of the husband continued for a period
   of more than three years entitled the wife to an absolute
   divorce.

2. DIVORCE—*Desertion—Justification—Case at Bar.*—If the husband
   had repented of his desertion of the wife, and had made any
   overture with the intention of ending the separation, and any
   conduct on her part amounting to cruelty to him had prevented
   his cohabiting with her in the relationship of man and wife,
   that would have justified his thereafter continuing to live apart
   from the wife, and, so long as such situation continued, the
   wife, in contemplation of law, would have been considered as
   guilty of desertion.

3. ANTENUPTIAL OR POSTNUPTIAL CONTRACTS FACILITATING SEPARA-
   TION.—Where the specific object and the actual result of an
   antenuptial contract was to encourage or facilitate a separa-
   tion after marriage, such a contract is illegal and void, and the
   same principle is applicable to postnuptial contracts.

4. ANTENUPTIAL OR POSTNUPTIAL CONTRACTS FACILITATING SEPARA-
   TION—*Case at Bar.*—Although in the instant case an antenup-
   tial contract contained no express statement that its provisions,
   limiting the husband's legal obligation to support the wife and
   her·illegitimate child by him, were meant to go into effect upon
   his desertion of the wife, so as to enable him to accomplish
   such desertion, and yet escape his legal obligation, except as

to the trivial amounts stipulated for in the contract, that such was the specific object of the contract clearly appeared from other evidence in the cause, including the testimony of the husband, and the contract was therefore invalid.

5. ANTENUPTIAL CONTRACTS—*Parol Evidence to Show Illegality.*— Parol evidence is admissible to show the illegality of a contract in contemplation of marriage, as tending to encourage or facilitate a separation after the marriage.

6. MARRIAGE CONTRACTS—*Validity.*—A contract between a husband and wife, the specific object of which is to faciliate a separation after the marriage, is distinguishable from *bona fide* antenuptial and postnuptial contracts, not made with the specific object of providing a contract limitation of the legal obligation, with a view to controlling the action of the parties or of the court on the subject in any future proceeding for divorce or alimony, and in which the ground or grounds relied on for divorce arise from the action of the husband or wife after the contract is executed. The two features last mentioned are those which render such contracts invalid, and distinguish them from antenuptial and postnuptial contracts which are valid.

7. MARRIAGE CONTRACTS—*Validity.*—It is true that some postnuptial contracts which precede separation are in most jurisdictions held to be valid; but they are so held only where they contemplate an immediate separation for some ground existing prior to the contract which is sufficient of itself to bring about the separation. Such holding proceeds upon the principle that the parties have already irrevocably determined upon a separation for a pre-existing cause, and hence the upholding of an agreement as to property rights with a view to such an inevitable separation does not in such case encourage or facilitate the separation.

8. ALIMONY—*Antenuptial and Postnuptial Contracts.*—Even *bona fide* antenuptial and postnuptial contracts, valid in all other respects, cannot bind the action of the court on the subject of alimony. The court will usually adopt such contract provisions, if just and reasonable; otherwise, it will not do so.

9. LEGITIMACY—*Marriage as Legitimizing Child Born Out of Wedlock.*—The requirement of the statute for the legitimating of a child born out of wedlock is that the father shall intermarry —enter into the marriage status—with the mother of the child. There is but one marriage status known to the law, and from it flows the legal obligation of the husband to maintain and support the wife and child. The benefit of the statute cannot be obtained without the payment of the price therefor therein fixed.

3

10. APPEAL AND ERROR—*Divorce—Death of One of the Parties—Abatement and Revival.*—In a suit for divorce by a wife against her husband, the trial court decreed a divorce to the husband on his cross-bill. The husband died pending appeal by his wife after the case was argued and submitted to the Supreme Court of Appeals. As the husband's death would render inoperative a decree granting the wife a divorce or allowing her alimony, no decree will be entered on those subjects by the Supreme Court of Appeals, except to reverse the original decree under review in such of its holdings as are found to be erroneous. To this extent the decree of the Supreme Court of Appeals will still be effective, for there can be no abatement of the original decree by reason of the death of any party to the cause after the appeal had been allowed; and by virtue of the statute (Code 1919, sec. 6167) the appellate court may, in its discretion, enter its decree dealing with the adjudications of the original decree as if no death of any party to the cause had occurred.

Appeal from a decree of the Circuit Court of Elizabeth City county. Decree for defendant. Complainant appeals.

*Reversed and Remanded.*

The original bill in this cause was exhibited by the wife, the appellant, against the husband, the appellee, for divorce on the statutory ground of wilful desertion. The husband filed his answer and cross-bill, and later, after more than three years had elapsed, filed his amended and supplemental answer and cross-bill, alleging cruelty on the part of his wife and praying that the divorce be awarded to him on that ground.

Following the filing of the second cross-bill there was ancillary pleading on the part of the wife by petition praying for suit money and alimony *pendente lite.*

The suit also involves the custody, maintenance and education of an infant son of the parties, who was born out of wedlock, and was about nineteen and a half months old at the time of the marriage, but those matters being re-

served for further consideration by the court below are not involved in the appeal.

There was an antenuptial contract between the parties which is as follows:

"This agreement, made this 18th day of March, in the year 1914, between S. Gordon Cumming, of the one part, and Mittie N. Jester, of the other part, both of the county of Elizabeth City, Virginia.

"Witnesseth, that for and in consideration of the mutual agreements and covenants and conditions herein contained, and the sum of money heretofore paid and agree to be paid as hereinafter set forth, and of the consummation of the marriage now contemplated by the said parties, it is mutually covenanted and agreed between the said parties, as follows:

"First: That the said S. Gordon Cumming hereby does release and renounce any and all claims or interests of any kind whatsoever growing out of the said proposed marriage in and to any property now owned or which may hereafter be owned by the said Mittie N. Jester; and that whatever property she now owns or may hereafter own, shall be held by her as her own individual separate estate, free from any claims or rights, marital or otherwise, on his part:

"Second: And that he, the said S. Gordon Cumming, doth further covenant and agree to pay to the said Mittie N. Jester the sum of ten dollars ($10.00) per week from the consummation of the said marriage for a period of six months; one-half of the said money to be paid her for her own use and benefit and support, and the remaining half to be paid for the support and maintenance of Kenneth Gordon, the infant son of the said Mittie N. Jester and the said S. Gordon Cumming. And the said S. Gordon Cumming doth further recognize the legal liability imposed upon him for the support and maintenance of the said child, and

the execution of this paper on his part is not intended to operate and does not operate to relieve him of the duty imposed upon him by law to maintain, care for and support his said child after the expiration of the said six months; but he hereby recognizes said obligation on his part, and covenants and agrees to contribute to the support of the said child five dollars ($5.00) per week for the period of six months above described, and doth further covenant and agree to continue said payments until the said child is of sufficient age and size to earn his own living, or until said child shall have reached the age of sixteen. The above payments to be made so long as the possession of the said child is not given to the said S. Gordon Cumming, but should the mother of the said child, Mittie N. Jester, give up possession of the said child, and the same be delivered to the said S. Gordon Cumming, then he covenants and agrees to provide, care for and maintain the said child.

"Third: The said Mittie N. Jester doth hereby release and renounce any and all claims or interests of any kind whatsoever growing out of the said proposed marriage, or in consequence thereof, in any property now owned or hereafter acquired by the said S. Gordon Cumming, and doth accept in lieu of her rights therein the sums of money heretofore paid her by the said S. Gordon Cumming and the payment of the sum of ten dollars per week, five dollars per week to her for her own use and benefit, for the period of six months, and five dollars per week for the maintenance and support of her said child; and in full satisfaction of any and all claim on her part upon the said S. Gordon Cumming, both for her support and maintenance, and any other marital rights.

"This instrument embraces all agreements, promises or covenants of any sort on the part of the said parties growing out of or relative to the said proposed marriage, and its terms shall not be changed except in writing and signed by both parties thereto.

"Witness the following signatures and seals the day and year first above written.

"(Signed) S. GORDON CUMMING (Seal).
"(Signed) MITTIE ANN JESTER (Seal)."

There were depositions and documentary evidence filed in behalf of both husband and wife.

By the decree under review said contract was "sustained, upheld, and confirmed as the free act and deed of the parties made for a valuable consideration and in conformity with law;" and the court being of opinion as recited in the decree, that the husband "is entitled to an absolute divorce * * on the grounds of desertion and cruelty * * three years having elapsed * * " decreed an absolute divorce, and that each party should "be absolutely divested of any right, title, interest and estate of any character whatsoever in any property now owned or hereafter acquired and held by the other," making no allowance to the wife of any alimony, either *pendente lite* or for the future.

By an interlocutory order in the cause the husband was ordered to pay $50.00 to an attorney for the wife "on account of his fee for legal services in conducting this suit," and by the decree under review the husband was ordered to pay the costs of the suit, including a fee of $50.00 to the same attorney "in full of his fee for services as such counsel." No other allowance of suit money and no alimony *pendente lite* was made by the court below.

Pending the appeal this, the appellate court, ordered that the husband pay the expense of printing the record, which amounted to $————.

The material facts in the case are as follows:

The child aforesaid was recognized by the father before the marriage and it is an unquestioned fact shown in evidence that the purposes of the husband in entering into the

marriage relationship in question was to legitimate the child under the statute in such case made and provided (Code 1887, sec. 2553; Code, 1919; sec. 5269) and to confer upon the mother of the child the *status* of a married woman, "to give her a chance," to use the words of a witness in the case, "to straighten out her life and settle down to normal, reasonable, hopeful existence;" but that *status* was to be that of a married woman deserted by her husband. For reasons which need not be stated here, except to say that they chiefly grew out of disparity in education, culture, tastes and stations in life, and the opposition of the family of the husband to such marriage the latter was unwilling to cohabit with the wife in the relationship of marriage, and this he made clearly known to the prospective wife at the time of the antenuptial contract aforesaid. He also made it clearly known to her at the same time that he would not take the marriage vows—would not be a party to the marriage ceremony—unless the wife-to-be would enter into the antenuptial contract aforesaid, and thereby agree to release him, except as to the trivial money payments provided for therein, from the financial burden of the obligation which the marriage *status* would impose on him of providing for the maintenance and support of the wife and child. The contract was made with the specific object of providing a contract limitation of the legal obligation aforesaid which should govern the rights of the wife in the premises following the desertion of the wife by the husband after the marriage.

The attitude of the wife at the time of the antenuptial contract, and at the time of the marriage was that of taking all that she could get for herself and child. She was not asked to agree to the desertion by the husband, and as a matter of fact did not do so either before or after the marriage. She did, however, understandingly and knowingly agree to the terms of the antenuptial contract in or-

der to obtain the marriage, and thereby, in substance, agreed that, if deserted by the husband she would go her separate way, and, as she had no property whatever, and as the members of her family were not able, even if willing to support her (which facts are also shown in evidence) that she would work for her own living and for her own support and maintenance and that of her child so long as she kept him with her, except for the trivial assistance provided for in the contract.

Accordingly the antenuptial contract aforesaid was executed, and on the same night the marriage was celebrated and immediately thereafter the husband went to his own home, and then and there wilfully deserted his wife with the fixed purpose never to cohabit with her in the marriage relationship. In that purpose, as the evidence in the cause, including his own testimony, clearly shows, he never waivered, and from that time until the decree under review was entered, as such evidence also clearly shows, he continued such desertion—being longer than the statutory period of three years giving ground for absolute divorce. It also clearly appears from such evidence, including the testimony of the husband, that the conduct of the wife which is relied on by the husband as constituting cruelty did not occur until after his desertion aforesaid, and hence did not originally cause such action on his part, and, further, that such conduct did not in any way cause him to continue his desertion aforesaid.

The conduct of the wife which is relied on by the husband as constituting cruelty to him grew out of the controversy which arose between the husband and wife over the binding force of the antenuptial contract aforesaid, he insisting that the contract measured and limited his duty to her and the child in the matter of maintenance and support, and she that their need for the actual necessaries of life was such that she could not abide and was not bound by the contract.

Other matters of pleading and proof are mentioned in the opinion below.

*R. E. Byrd* and *R. B. Gwathmey,* for the appellant.

*C. V. Meredith* and *C. Vernon Spratley,* for the appellee.

SIMS, J., after making the foregoing statement, delivered the following opinion of the court:

The following questions which are involved in this cause will be disposed of in their order as stated below:

1. Is the decree under review erroneous in its adjudication that the husband is entitled to an absolute divorce on the grounds of desertion and cruelty?

We are of opinion that this question must be answered in the affirmative.

[1-2] As appears from the facts set forth in the statement preceding this opinion, the conduct of the wife, relied on by the husband as constituting cruelty to him, did not originally cause the separation of the husband and wife, nor did it in any way cause its continuance. That separation and its continuance was wholly due to the wilful desertion of the wife by the husband, and would have existed just as it did had the conduct of the wife been blameless. Hence, as a justification or excuse for the desertion by the husband, the conduct of the wife, even though it were considered to be misconduct, must be disregarded, being immaterial to the issues before the court in this suit. Such desertion on the part of the husband continued for a period of more than three years, as appears from the statement preceding this opinion. The wife, therefore, was entitled to an absolute divorce on the ground of desertion, and not her husband.

Of course if the husband had repented of his desertion of the wife and had made any overture with the intention of ending the separation, and any conduct on her part amounting to cruelty to him had prevented his cohabiting with her in the relationship of man and wife, that would have justified his thereafter continuing to live apart from the wife, and, so long as such situation continued, the wife, in contemplation of law, would have been considered as guilty of desertion; but no such case is presented by the record before us.

2. Is the decree under review erroneous in its adjudication that the antenuptial contract set forth in the statement preceding this opinion was valid?

We are of opinion that this question must be answered in the affirmative.

[3] As appears from the facts set forth in the statement preceding this opinion the specific object and the actual result of the antenuptial contract was to encourage or facilitate a separation after the marriage. Such a contract is illegal and void. Hence it is not binding upon and cannot be enforced against either party. 1 Bishop on Mar. Div. & Separation (1891), sec. 1277; *Watson* v. *Watson,* 37 Ind. App. 548; 77 N. E. 355; *Neddo* v. *Neddo,* 56 Kan. 507, 44 Pac. 1.

As said in Bishop on Mar. Div. & Sep. sec. 1277; "* * any agreement encouraging a separation is void. * * Even if made before marriage, in view of a possible living apart, it is invalid."

In *Watson* v. *Watson, supra,* 37 Ind. App. 548; 77 N. E. 355, there was an antenuptial contract which provided for a certain dower for the wife in the event that she should survive the husband, but it also provided that "in the case the parties fail to agree and shall, for any cause, separate and continue to live apart," the husband should pay the wife the sum of $200.00, and that neither party should have

"any claim, interest, right to and in the separate property of the other, either in the life time of the parties or at the death of either." The agreement was followed by marriage and cohabitation of the parties as man and wife for three years, when they separated, and the husband brought suit for divorce on the ground of conduct of the wife which he alleged amounted to cruelty. The wife filed an answer and cross-bill in which she made the counter-charge of cruelty and non-support, and prayed that the divorce and alimony be awarded to her. The court below held the wife to be entitled to the divorce, decreed accordingly and allowed the wife alimony and attorney's fees, and the husband appealed. As stated in the opinion, the sole question before the appellate court was "the effect of the antenuptial contract on the question of alimony." In the opinion of the court it is further said:

"Appellant insists that $200.00 is the limit of his liability to appellee in case of a separation for any cause, and that the decree should be modified so that the amount of appellee's recovery for alimony shall not exceed that sum * * *.

"If we should adopt appellant's construction of the antenuptial contract it would be in effect affirming a rule of law authorizing parties contemplating marriage to fix in advance the husband's liability for alimony in case either shall obtain a divorce. This we cannot do. While the law of this State is firmly fixed giving parties the right to adjust and settle property interests by antenuptail contract" (citing authorities), "yet such settlements must be free from fraud and imposition" (citing authorities), "and not against public policy, *Neddo* v. *Neddo* (1896), 56 Kan. 507, 44 Pac. 1.

"It is equally well settled that the husband is bound to support his wife" (citing authorities). "This legal obligation is a part of every marriage contract. It is the duty

imposed upon the husband by law, and from this obligation he cannot shield himself by contract.  To hold otherwise would be to invite disagreement, encourage separation, incite divorce proceedings and commend a principle which would be a menace to the welfare of society, contrary to public policy and tending to overthrow and destroy every principle of the law of marriage requiring that the husband and wife shall live together during their natural lives, and that the husband, within his financial ability, shall furnish the wife with reasonable necessaries for her support and home comforts in sickness and in health, as by law he is required to do. * * The case at bar furnished a good illustration where a settlement under contract would be an incentive to a separation * * .  By the payment of the insignificant sum of $200.00 he would be relieved from" (the legal obligation aforesaid).  " * * such a contract is contrary to public policy and cannot be enforced.  We must not be unmindful of the fact that the public have an interest in causes of that character, aside from the parties, and for this reason the question of alimony is a matter for the court and not a subject of agreement between the parties whereby the action of the court is to be controlled.

"A decree of divorce not only terminates the marital obligation, but from the nature of the litigation, property rights growing out of the marriage relation are necessarily involved in such proceedings, and there settled.  This rule applies to all cases alike, regardless of any contract the parties in contemplation of marriage may have made."

In *Neddo* v. *Neddo, supra* (56 Kan. 507, 44 Pac. 1), there was an antenuptial contract which provided that if the "parties should fail to live together amicably as husband and wife, and they should separate, either by abandonment or by divorce being granted to either or both of said parties, then the property * * owned and held by either of said parties * * shall be and remain" (their separate property),

"and the parties hereby release and forever quit claim any right, title or interest acquired by reason of said marriage in the property" (aforesaid), "and also waive any claim to alimony or other rights acquired or liabilities incurred by reason of said marriage, in the event of such separation or divorce * * ." The parties married and lived together for fourteen years when they separated. The husband brought suit for divorce on the ground of adultery as charged in his third amended petition, and set up the antenuptial contract as in bar of any claim for alimony on the part of the wife. The wife filed her answer and cross-bill alleging desertion on the part of the husband. The court below decreed in favor of the wife, granted an absolute divorce (under the statute similar to ours, except that the period therein named is shorter than that provided in our statute as ground for an absolute divorce), and held the contract to be void and awarded the wife counsel fees, and alimony both *pendente lite* and permanent. The appellate court affirmed the case and in its opinion said:

"Contracts or settlements in consideration of marriage, which are reasonable, equitable and not against public policy, are recognized as valid by the statutes of this State and the decisions of this court. * * we hold that it" (the antenuptial contract aforesaid) "contains provisions contrary to public policy, * * . They seem to invite disagreement and abandonment, and make the same productive of profit to the party having the greater amount of property. The law of marriage * * required them to live together as husband and wife during their natural lives; but by violation of that law * * the party having the bulk of the property might derive pecuniary profit. No marriage settlement ought to be upheld which invites and encourages a violation of the marriage vow, and this contract is of that character. By the abandonment of the wife in violation of the law of marriage it was in effect stipulated that the

guilty party should be relieved from the duty of support that the law enjoins. A contract which invites the hope of financial profit from the separation of married people should not be enforced."

The same principle is applicable to postnuptial contracts. 1 Bishop on Mar. Div. & Sep. sec. 1261; 2 *Idem,* sec. 696; 1 Elliott on Contracts, sec. 414; 1 Page on Contracts, sec. 429; *Pereira* v. *Pereira,* 156 Cal. 1, 103 Pac. 488, 23 L. R. A. (N. S.) 880, 134 Am. St. Rep. 107; 9 Cyc. 521.

As said in Bishop on Mar. Div. & Sep., *supra* (sec. 1261) : " * * * since the law makes the public a party to every suit for dissolution or separation, and forbids either form of divorce on the mutual agreement of the parties * * any bargaining between them for a future separation, * * or tending to the like end, being contrary both to the law and legal policy, is void."

And again (2 *Idem, supra,* sec. 695), the same learned author says: "Therefore any agreement for divorce, or *any collateral bargaining promotive of it,* is unlawful and void." (Italics supplied.)

As said in 1 Elliott on Contracts, *supra,* (sec. 414) : "Contracts between husband and wife looking to a future separation * * are invalid."

As said in *Pereira* v. *Pereira, supra* (156 Cal. 1, 103 Pac. 488, 23 L. R. A. (N. S.) 880, 134 Am. St. Rep. 107) : " 'Any contract between the parties having for its object the dissolution of the marriage contract *or facilitating that result* * * is void as *contra bonos mores.*' "        (Italics supplied.)

[4, 5] It is true that the contract in the cause before us contains no express statement that its provisions limiting the husband's legal obligation to support the wife and child are meant to go into effect upon his desertion of the wife, so as to enable him to accomplish such desertion and yet escape the legal obligation aforesaid except to the trivial amounts stipulated in the contract. But that such was the

specific object of the contract clearly appears from other evidence in the cause, including the testimony of the husband. Such evidence, although parol, is admissible to show the illegality of the contract. 9 Cyc. 766; 13 C. J. 770-1. And certainly in a divorce suit, in which it is the duty of the court, of its own motion, if need be, "to go into the investigation of the facts" (although) "not contested by the pleadings" (2 Bishop on Mar. Div. & Sep. sec. 663), the mere omission of such a contract to express its real object, cannot close the eyes of the court to that object when it is unmistakably disclosed by other evidence in the cause. We must regard the contract, therefore, as if its real object aforesaid had been written in it. So regarding it, it was illegal and void.

[6-8] Such a contract is distinguishable from *bona fide* antenuptial and postnuptial contracts (such as are involved in all of the cases cited in the brief for appellee), not made with the specific object of providing a contract limitation of the legal obligation aforesaid with a view to controlling the action of the parties or of the court on the subject in any future proceeding for divorce or alimony, and in which the ground or grounds relied on for divorce arise from the action of the husband or wife after the contract is executed. The two features last mentioned are those which render such contracts invalid and distinguish them from antenuptial and postnuptial contracts which are valid. It is true that some postnuptial contracts which precede separation are in most jurisdictions held to be valid, but they are so held only where they contemplate an immediate separation for some ground existing prior to the contract which is sufficient of itself to bring about the separation. Such holding proceeds upon the principle that the parties have already irrevocably determined upon a separation for a pre-existing cause, and hence the upholding of an agreement as to property rights with a view to such

an inevitable separation does not in such case encourage or facilitate the separation. *Speck* v. *Dausman*, 7 Mo. App. 165; 9 Cyc. 520-2; 13 C. J. 465-6. And the weight of authority and better opinion, indeed, is that even *bona fide* antenuptial and postnuptial contracts valid in all other respects, cannot bind the action of the court on the subject of alimony. The court will usually adopt such contract provisions if just and reasonable; otherwise it will not do so. 1 Page on Contracts, sec. 430.

[9] But it is urged that in the case before us the husband would not have entered into the marriage *status*, but for the contract aforesaid limiting the resultant liability upon him aforesaid which would otherwise flow therefrom; that the act of the husband in entering into the marriage for the purpose of legitimating the child under the statute was a laudable act in itself, and that public policy demands that such action in the direction of just reparation should be encouraged and not discouraged. This argument can lead only to the position (which however is not so stated in the argument for the husband), that the husband in such case should be allowed by contract to limit his resultant liability aforesaid, because otherwise he would not accord, and others so situated will not accord such reparation at all. But it is apparent upon but slight reflection that the courts have no power to so hold. That would be to allow parties by private agreement to establish such marriage *status* as they may wish. The requirement of the statute for the legitimating of a child born out of wedlock is that the father shall intermarry—enter into the marriage *status*—with the mother of the child. There is but one marriage *status* known to the law, and from it flows the legal obligation of the husband aforesaid to maintain and support the wife and child. The benefit of the statute cannot be obtained without the payment of the price therefor therein fixed. The courts are powerless to abate that price.

[10] We had intended to follow the conclusions reached

above by consideration and adjudication upon the further
questions of whether in the state of the pleadings an ab-
solute divorce could be decreed on the ground of the deser-
tion of the wife by the husband aforesaid, and, in any case,
to have adjudicated that the wife is entitled to an allow-
ance of alimony, both *pendente lite* and permanent, and
to have remanded the cause to the court below for further
proceedings to the end that such court should fix the
amounts of the allowances of alimony and also of further
reasonable attorney's fees *pendente lite;* but since the case
was argued and submitted to this court and after the por-
tion of this opinion preceding this paragraph had been
written, the death of the husband occurred. This fact *is*
conceded by counsel representing both husband and wife,
and of itself brings about a situation in which any decree
we might enter granting a divorce or allowing alimony
would be inoperative. Hence no decree will be entered by
us on those subjects except to reverse the original decree
under review in such of its holdings as are found to be
erroneous. To such extent the decree of this court will
still be effective, for there could be no abatement of the
original decree by reason of the death of any party to the
cause after the appeal had been allowed (*Reid's Adm'r.* v.
*Strider's Adm'r,* 7 Gratt. (48 Va.), at p. 84, 54 Am. Dec.
120) ; and by virtue of the statute (Code 1919; sec. 6167)
the appellate court may, in its discretion, enter its decree
dealing with the adjudications of the original decree as if
no death of any party to the cause had occurred. There
remains, therefore, in issue upon this appeal the subject
of the provisions of the decree under review which held
the antenuptial contract aforesaid to be valid, granted an
absolute divorce on the prayer of the husband and further
decreed, in effect, that the wife should be absolutely di-
vested of any right, title, interest and estate of any char-
acter whatsoever in any property then owned or thereafter

acquired and held by the husband. For the reasons stated above we are of opinion that all of such provisions of such decree were erroneous and to such extent the decree will be reversed. No order dismissing the cause will be entered here as we are not advised whether any action has been taken by the court below on the subject of the custody of the child pending the appeal and prior to the death of the husband.

*Reversed and remanded.*