CATHERINE P. D'AMATO v. JOHN KING D'AMATO

SUPERIOR COURT     HARTFORD COUNTY     FILE NO. 73231-J

Memorandum filed April 17, 1946.

*Davis, Lee, Walker* and *Wright*, of Hartford, for the Plaintiff.

*William J. Wholean*, of Hartford, for the Defendant.

INGLIS, J.  In this action the plaintiff seeks an annulment of her marriage or, in the alternative, a divorce on the ground of desertion.  The parties were married on March 25, 1942.  At the time, the plaintiff, then a girl of sixteen years of age, was pregnant by the defendant, who was then seventeen.  The child, Robert Michael D'Amato, was born June 26, 1942.

The claim for an annulment is based upon the fact that shortly before the marriage, to wit, on March 9, 1942, the parents of the respective parties and the parties themselves signed a contract whereby it was agreed that both groups of parents would give their consent to the marriage but that the parties would not live together as husband and wife until they became twenty-one years of age or until the parents judged that they were able to maintain their own home, whichever event happened first.

No precedent has been cited, nor has any come to the court's attention, for holding that the existence of such an agreement nullifies a marriage.  On the contrary it seems to be universally held that the validity of a marriage is not affected by an antenuptial agreemen of the parties not to live together.  2 Schouler, Marriage, Divorce, Separation (6th Ed.), § 1076.

The situation involved in the present case is quite different from that in *Davis* v. *Davis,* 119 Conn. 194. There, at the time the marriage was entered into, both parties knew that neither was in reality consenting to the marriage contract. No real marriage contract was intended. Here, both parties intended that there should be a marriage. Both consented to it. The only purpose of the contract was to limit the effect of the marriage in one particular. They both consented to the marriage contract and intended to create the status of marriage between them. It was their intention that all of the incidents of the marriage status would obtain except that for a limited period of time they would not live together. That being the situation, it is clear that the marriage contract itself was fully assented to by both parties. The marriage contract, therefore, is not a nullity for lack of consent of the parties, and there is no ground upon which the marriage can be annulled.

So far as the desertion is concerned, the evidence is that shortly after the birth of the child, the plaintiff and her parents changed their minds about the agreement that the parties should not live together. They requested the defendant's parents to permit their son to live with the plaintiff, and the plaintiff's parents offered to provide a suitable home for the young couple. The defendant's parents, on behalf of the defendant and with the defendant's acquiescence, refused the proposal, and neither the defendant nor his parents have indicated any change of attitude in the matter since.

Three of the four elements essential to a case of desertion which are specified in *Todd* v. *Todd,* 84 Conn. 591, 593, are clearly present in this case. There has been a cessation of cohabitation caused by the defendant. There has been an intention on his part not to resume cohabitation. And there has been no justification for his conduct in that regard. The only element about which there can be any question is that of lack of consent to the separation by the plaintiff.

As regards this latter element, it might be argued that the plaintiff by the antenuptial contract had bound herself to consent to the separation and therefore could not thereafter withdraw that consent, as she manifested an intent to do by her request that the defendant come and live with her. Such an argument would have force if the antenuptial contract were valid.

It is, however, generally held that a contract between spouses which is calculated to promote or facilitate a separation between them, which separation is not at least imminent because of some condition outside of the contract, is against public policy and void. 17 C. J. S. 619. This general principle applies to antenuptial contracts as well as postnuptial contracts, and the rule is that any such contract which contemplates either expressly or by necessary intendment that the parties will not cohabit after marriage is a nullity and either party may repudiate it after marriage. 2 Schouler, op cit., § 1078: *Franklin* v. *Franklin*, 154 Mass. 515, 13 L. R. A. 843; *Reifschneider* v. *Reifschneider*, 241 Ill. 92; *Neddo* v. *Neddo*, 56 Kan. 507; *Cumming* v. *Cumming*, 127 Va. 16.

As is well pointed out in *Cumming* v. *Cumming*, supra, there is but one form of marriage status known to the law, and two parties who are about to enter that status should not be permitted to vary that status in any one of its essential incidents merely by contract. They may contract as to property rights, but as to such an essential feature of the marriage status as the matter of cohabitation, any agreement which purports to modify the recognized marriage status in that particular is clearly against public policy.

That being the state of the law, it follows that the plaintiff in this case was not bound by the contract to continue after marriage the consent which she had given in the antenuptial contract to her husband's living apart. When she repudiated that consent, as she did, she had a right so to do, and thereafter the defendant in living apart from her did so without her consent. Accordingly, the plaintiff is entitled to a divorce on the ground of desertion.

At the present time the plaintiff receives a net pay of about $32 per week. The defendant has been in military service but is now discharged. He is receiving $20 per week as unemployment compensation under the G. I. Bill of Rights Act. He also has a disability claim pending under that act and hopes to go on with his education and get the allowance for that provided by the act. He ought to bear some of the burden of the support of the child even though his income at present is limited. The antenuptial contract being void as pointed out above the provisions thereof relieving the defendant of the support of the child are of course not effective. It is clearly for the welfare of the child that he be in the custody of the plaintiff.

Judgment may enter decreeing a divorce to the plaintiff on the ground of desertion, awarding her the custody of the child, but with the right of reasonable visitation in the defendant and his parents, and ordering the defendant to pay the plaintiff $5 per week for the support of the child.