**CIRCUIT COURT OF THE CITY OF NORFOLK**

Calvin Burnell Bailey, Sr.

v.

Jessie Henrietta Bailey

March 9, 1987

Case No. (Chancery) C-85-1035

**By JUDGE CHARLES R. WATERS, II**

The issue before the court in this case is whether a Stipulation and Property Settlement Agreement dated October 31, 1984 (the "Agreement") is illegal and void as contrary to public policy (as agreed by counsel, the public policy issue shall be viewed in the broad sense rather than the more restrictive sense as set forth in the Exceptions). The first ground for the Exceptions has been abandoned by counsel for the wife.

The Commissioner found as a fact that the wife freely and voluntarily executed the Agreement at a time when the parties had separated and were continuously living apart, although the parties, who had a minor child, had not been separated for a period of one year. That finding is entitled to the same dignity as a jury verdict, and will not be disturbed since there is adequate evidence in the record to support it.

The Commissioner found the Agreement to be valid and enforceable, but did not consider the issue regarding public policy. Through some misunderstanding, counsel thought that the Commissioner would receive briefs on

the public policy issue, but the report was rendered before the briefs were submitted.

Having carefully examined the public policy issue as expertly presented to the court by both counsel, I conclude that the Agreement was not contrary to public policy and is, therefore, valid.

The essential facts of this case are these:

1. The husband left the home in August of 1984, did not renew cohabitation with the wife, and there is some evidence in the record that he began living with another woman.

2. On October 31, 1984, the husband and wife executed the Agreement at the Berg Legal Clinic, after the wife was informed that she should have her own legal counsel and that the attorney could represent only the husband.

3. The Agreement was prepared by counsel for the husband and the wife was unrepresented, although she voluntarily signed the Agreement.

4. In general terms, the Agreement provided for the surrender of dower and curtesy in all real estate, provided that husband and wife should not thereafter create bills to the account of the other, set custody and visitation rights, granted specific child support, set certain procedures in case the child became ill, prevented each from molesting the other, and divided personal property. There was no provision for alimony.

5. At the time of the execution of the Agreement, the husband did not have grounds for divorce, although the wife did.

6. Divorce proceedings were later instituted by the husband on July 11, 1985, the bill of complaint alleging a continuous one year separation, even though the parties had not lived apart for one year at the time of the filing. This was apparently done under the theory that the one year period would expire prior to the entry of the final decree. The timing of the filing is not an issue in this case.

7. For present purposes, pertinent parts of the Agreement are:

i) WHEREAS, the parties to this Agreement were married on the 2nd day of October, 1960, in Norfolk, Virginia, and certain *irreconcilable*

*differences* have arisen between the parties
to this Agreement, and a suit for divorce is
imminent . . . (emphasis added)

(ii) Separation: Each party shall be free
from interference, direct or indirect by the
other *as fully as though unmarried* . . . . And
each shall not molest or interfere with the
other, *nor* shall *either attempt to compel the
other to cohabit or dwell with him or her,
by any means whatsoever.* (emphasis added)

Counsel for the wife urges that the Agreement is
illegal and void as against public policy because the
husband caused the separation and had no grounds at the
time of the execution of the Agreement, and because the
object of the Agreement is to facilitate and encourage
divorce since it seeks to prohibit reconciliation.

In *Cumming v. Cumming*, 127 Va. 16 (1920), relied
on by the wife, the court held an antenuptial agreement
invalid as contrary to public policy under circumstances
where the husband deserted the wife and later charged
cruelty on the part of the wife. It was held that where
the specific object and the actual result of the antenuptial
contract was to encourage or facilitate a separation,
such a contract was illegal and void. At page 30 the
court opined:

Such a contract is distinguishable from *bona
fide* antenuptial and postnuptial contracts
. . . not made with the *specific object* of
providing a contract limitation of the legal
obligation aforesaid with a view to controlling
the action of the parties or of the court on
the subject in any future proceeding for divorce
or alimony, and in which the *ground* or *grounds*
relied on for divorce arise from the action
of the wife or husband *after* the contract is
executed. The two features last mentioned are
those which render such contracts invalid and
distinguish them from antenuptial and postnuptial
contracts which are valid.

Obviously, the 1920 *Cumming* court is saying that in order for an agreement to be void the specific object of the agreement must be to encourage or facilitate separation or divorce, and it could be argued that the court is saying that the *grounds* for divorce must precede the execution of the agreement, which was not the situation with the husband in the present case because he had no grounds at the time the Agreement was executed. Of course, it should be noted that "no fault" did not exist in 1920.

The wife also relies on *Arrington v. Arrington*, 196 Va. 86 (1954). In that case the wife left home at the urging of the husband, there being no preexisting cause for legal separation when the agreement was executed. The court held that separation by mutual consent was not a desertion and that, under these circumstances, the agreement signed by the wife at the husband's insistence was contrary to public policy because its object was to facilitate a separation and promote a divorce. The court stated at page 93:

> The evidence supports the conclusion of the chancellor of the trial court that the separation agreement was due to the importunities of the husband, and that its object and purpose were to facilitate a separation and promote a divorce. As such, it is plainly contrary to the public policy of this State and void.

Counsel for the wife urges that the present Agreement was also due to the importunities of the husband who deserted, and that the object of the present Agreement also was to encourage and facilitate divorce. In the present case, while it is true that the wife had grounds for divorce, she did not pursue those grounds prior to the execution of the Agreement, and the husband's grounds had not yet matured since the parties had not been separated for a year.

Is the Agreement void as against public policy merely because it is urged by a husband whose grounds for divorce have not become irrevocably fixed at the time of the execution of the Agreement? Or is it sufficient that the parties have separated with little or no hope of reconciliation? Is

the specific object or general purpose of the present Agreement to encourage or promote divorce?

The answers, I think, lie in the decision of *Cooley v. Cooley*, 220 Va. 749 (1980), a case relied on by both parties.

In that case, the parties separated in 1971 and executed an agreement providing for the release of dower and curtesy, monthly support payments and a release of the husband from paying any other alimony or support (the "first agreement"). In 1972, the husband brought a suit for divorce at which time, following negotiations, the first agreement was modified so that the monthly payments were increased in exchange for the wife's agreement not to contest the divorce (the "second agreement"). At the time of the execution of the first agreement, no grounds for divorce existed, but at the time of the execution of the second agreement grounds did exist because by then the parties had been living separate and apart for one year.

At page 752, the court reviewed and set forth the existing law:

> Because it is the policy of the law to foster marriage and to prevent separation, an agreement between husband and wife is void when its general purpose or specific object is to encourage or facilitate separation or divorce. *Shelton v. Stewart*, 193 Va. 162, 165, 67 S.E.2d 841, 843 (1951); *Cumming v. Cumming*, 127 Va. 16, 25, 30, 102 S.E. 572, 574, 576 (1920). *See Capps v. Capps*, 216 Va. 378, 380, 219 S.E.2d 901, 903 (1975). But marital property settlements entered into by competent parties upon valid consideration for lawful purposes are favored in law and such will be enforced *unless their illegality is clear and certain. Wallihan v. Hughes*, 196 Va. 117, 125, 82 S.E.2d 553, 558 (1954). Consequently, agreements between spouses dealing with a division of property, *even though in contemplation of divorce*, are valid *unless part of a scheme to effect a separation or to obtain a divorce by collusion. Ryan v. Griffin*, 199 Va. 891, 896, 103 S.E.2d 240, 244 (1958). (emphasis added)

The interesting aspect of *Cooley* is that the court examined and treated each of the two agreements separately and upheld both of them. For present purposes, it is only necessary to examine the court's treatment of the first agreement which was executed at a time when no ground for divorce had become irrevocably fixed. At page 752:

> We reject the husband's contention that the two instruments here are void as violative of public policy. As to the 1971 [first] agreement, the parties had experienced marital difficulties for nearly three years before its execution. Because of the discord, the husband and wife recognized that a separation was unavoidable. Indeed, the preamble of the agreement drafted by the husband's attorney recited the "unhappy" conditions and the necessity to separate "for the health and happiness" of both parties. The agreement was merely an attempt by the estranged couple to adjust mutual rights and obligations preliminary to the actual separation which took place immediately; the instrument was not part of a device nor was its general purpose or specific object to facilitate separation.

In light of the above, I conclude that to the extent that *Cumming* pronounced that a preexisting ground for divorce must exist in order for an agreement to be valid, such a prerequisite is no longer required under Virginia law.

With full realization that the one year period for a no fault divorce was fixed by the legislature, in whole or in part, for the purpose of encouraging reconciliation, I also conclude that the general purpose and specific object of the Agreement here was not to facilitate or promote divorce, but instead to settle marital and property rights. The Agreement must be upheld unless its illegality is clear and certain. Even though it may have been made in contemplation of divorce, I hold that the Agreement is valid. This conclusion was drawn after an examination

of the Agreement as a whole with due consideration of the facts and circumstances surrounding the execution of the Agreement. At the time of the execution of the Agreement, the husband had already deserted and there was ample evidence that he was cohabiting with another woman. The husband and wife, I believe, recognized that separation and divorce was unavoidable. Indeed, the preamble of the Agreement cited irreconcilable differences and imminent divorce. The Agreement did *not prevent* either party from cohabitation with the other, but prevented each party from attempting to *compel* the other to do so, all as a part of a one sentence non-molestation clause. When viewed in its entirety, the Agreement adjusted all manner of mutual rights and obligations. It was not part of a device nor was its general purpose or specific object to facilitate or encourage separation and divorce.