## CIRCUIT COURT OF THE CITY OF RICHMOND

Edward F. Schmidt, Jr.

v.

Esther Paz Schmidt

October 8, 1987

Case No. A-3057-C

By JUDGE T. J. MARKOW

The issue before this court is whether the antenuptial agreement entered into by the parties on November 22, 1978, is valid and enforceable. I am of the opinion that it is.

On the morning of November 22, 1978, the day of their marriage, Edward F. Schmidt, Jr. (Edward) and Esther Paz (Esther) executed a premarital agreement (hereinafter, the Agreement). The Agreement provided that in the event of divorce or Edward's predeceasing Esther, Esther would receive Edward's residence and certain furnishings therein. In the event of divorce, Edward reserved a life estate in the marital residence. In the event Esther predeceased Edward, the residence would become part of Esther's estate, subject to Edward's life estate. The Agreement otherwise absolved each party of any claims against his or her property which arose out of the marriage.

Esther's attorney reviewed the Agreement page by page and advised her as to her rights. They conferred approximately thirty minutes to one hour. She was advised that she was giving up "everything," except the interest in the house. A financial statement of Edward's and a list of Edward's real estate holdings were attached to the Agreement. The evidence is not clear, but it seems that the financial statement reflected more assets than Edward really owned at that time. After the conference with her attorney, Esther signed the Agreement without question or objection.

During the marriage Edward went beyond the requirements of the Agreement and gave Esther several gifts. He assigned a deed of trust note for $6,500 to Esther. Edward also changed the title in the residence to himself and Esther as tenants by the entirety. Edward gave Esther a general power of appointment in 1984 and opened trust and joint checking accounts for himself and Esther. During the marriage Edward and Esther also executed wills wherein Esther was to receive as much as one-half of Edward's estate at his death.

On or about May 1, 1986, Edward moved from the residence. On July 29, 1986, Edward filed a bill of complaint requesting a divorce *a mensa et thoro* on the ground of constructive desertion. He asked for enforcement of the Agreement, and for attorney fees and costs. Esther answered by denying that she constructively deserted Edward. In addition, Esther filed a cross-bill requesting a divorce *a mensa et thoro* on the ground of desertion, that the Agreement be found void and of no effect, that she receive spousal support, equitable distribution of the marital property, attorney fees and costs, and that Edward be enjoined from contact with her and from returning to the residence.

The parties have presented the court evidence in the form of depositions and exhibits from which the court can render a decision on whether the Agreement should be enforced or declared void.

The Agreement predates the July 1, 1986, operative date of Virginia's Premarital Agreement Act, Va. Code, Sections 20-147 to 20-155 (1987 Cum. Supp.), which provides: "All written agreements entered into prior to the enactments of this chapter between prospective spouses

for the purpose of affecting any of the subjects specified in § 20-150 shall be valid and enforceable if otherwise valid as contracts." Va. Code § 20-154 (1987 Cum. Supp.).

Esther argues that the Agreement is not a valid contract because: (1) the Agreement is unconscionable, (2) Edward's financial statement was not a full and frank disclosure of his worth, and (3) the parties had rescinded the contract by verbal agreement and abandonment.

Esther argues that the Agreement is unconscionable because it waives her right to spousal support and equitable distribution, she signed the Agreement on her wedding day, and Edward seemed to have considered the Agreement very lightly. Since the statute specifically provides for the parties to contract as to spousal support and property rights, the waiver of spousal support and equitable distribution alone is not sufficient to invalidate the Agreement.

The Agreement is not invalidated under the common law. In *Cumming v. Cumming*, 127 Va. 16, 102 S.E. 572 (1920), the court invalidated a premarital agreement entered into for the purpose of allowing the husband to desert his wife immediately after the marriage ceremony and, thereby, limit his liability for support of his wife and illegitimate child. *Id*. at 26-27, 102 S.E. at 577. The *Cumming* court held that a premarital agreement is void where the evidence clearly shows that the purpose and result of the premarital agreement was to encourage or facilitate a separation after marriage. *Id*., at 25, 102 S.E. at 576. The *Cumming* court also held that alimony (now spousal support) provisions in premarital agreements are not binding on the court but "the court will usually adopt such contract provisions if just and reasonable . . . ." *Id*. at 31, 102 S.E. at 576. Nothing in the evidence indicates that Edward or Esther entered into the Agreement for the purpose of facilitating a separation or divorce, nor is there any evidence that their separation was caused by the existence of the Agreement. In *Cumming*, the husband testified that his purpose for entering the agreement was to allow him to desert his wife and limit his support for her and his illegitimate child. *Id*. at 26-27, 102 S.E. at 577. There is no such evidence before this court. The Schmidts lived together for almost eight years before they separated. There is also no evidence that the waiver

of spousal support is unjust and unreasonable in this case. To the contrary, Esther was gainfully employed before and during the marriage. She chose to resign from her job, but there is no evidence that she is no longer able to work.

Sixty years later the Supreme Court of Virginia upheld *Cumming* in *Cooley v. Cooley*, 220 Va. 749, 263 S.E.2d 49 (1980). The *Cooley* court validated a postnuptial agreement because neither its purpose nor result was to facilitate or encourage the separation or divorce.

As to the claim of unconscionability based upon Esther's waiver of her right to an equitable distribution of the marital property, the Court of Appeals of Virginia in *Bragan v. Bragan*, 4 Va. App. 207, 4 V.L.R. 207 (1987), has held that the release of a claim to equitable distribution signed before adoption of the equitable distribution statute bars a monetary award in a divorce decree entered after adoption of the statute. Esther reasons that since she did not know in 1978 that she would receive the right to an equitable distribution of the marital property, then she should not be bound by the 1978 Agreement. Both the statute, under § 20-150 and § 20-154 of the Code, and the common law, under *Bragan*, indicate that she is incorrect.

The contract contemplated a full and complete severance of rights that Edward and Esther had in the property of the other that would arise from the marriage. Equitable distribution of property arises from that relationship. The legislature cannot act to impair existing contracts so as to deprive someone of a vested right without violating the United States Constitution and the Constitution of Virginia. *U. S. Const.*, art. I, section 10; *Virginia Const.*, art. I, sect. 11. Consequently, § 20-107.3 cannot be construed as amending or altering the effect of the Agreement.

As to the signing of the Agreement on their wedding day and Edward's cavalier attitude toward the Agreement, these are not the standards for determining unconscionability. Unconscionability requires a showing that the parties were not bargaining at arms' length. In the case at bar, Esther had the benefit of independent counsel in the form of a competent, experienced attorney. Her attorney has been practicing in Richmond for nineteen years and has represented other women in positions similar to that of

Esther. Esther conferred with him for approximately one hour. He explained the document "page by page" to Esther and it was made clear to her that she was giving up any claims she may have to Edward's estate other than the marital residence. While Edward says that the financial statement given Esther was not the most current, Esther, who has the burden of proving its material inaccuracy, has produced no competent evidence that it was materially inaccurate or misleading. It was established that his estate was sizeable (the financial report, if anything, indicated an estate larger than it really was), and that Esther was giving up any claim that she would have against it, other than a claim on the residence. Hence, the court must find that Esther was given ample notice as to the nature and extent of the estate or from which further inquiry could be made, she was dealing at arm's length, she was competent and was represented by counsel. She has not supplied ample evidence to the contrary or to establish that she did not knowingly enter this contract.

Furthermore, the primary purpose for executing a contract is to create certainty in the uncertain future. If parties can void contracts merely because, in hindsight, there existed a better opportunity, there would be no reason to contract at all. It is important for the courts to uphold contracts knowingly and freely entered where they are not the product of fraud or overreaching. This is such a contract, and it must be upheld.

Next, the court must determine whether the financial statement attached to the Agreement was an adequate disclosure of his worth. The evidence is conflicting as to whether Edward was worth more or less than the financial statement reflected. The Supreme Court of Virginia has ruled that in lieu of a fair and reasonable provision for the wife, a premarital agreement must contain a "full and frank disclosure. . . of the husband's worth. . . ." *Batleman v. Rubin*, 199 Va. 156, 160, 98 S.E.2d 519, 521 (1957). Under *Batleman*, the wife's agreement to accept a sum of less than one-third of the value of the property owned by the husband at the time the contract was signed, raises a presumption that the husband did not make a full and frank disclosure of his worth. *Id.* at 160, 98 S.E.2d at 521. The husband rebuts that presumption by providing the wife with a financial statement. *Id.* at 161, 98 S.E.2d

at 521. Edward rebutted the presumption by providing Esther with his financial statement. Hence, Esther bears the burden of showing that the financial statement was not a full and frank disclosure of Edward's worth.

Esther presents no credible testimony from which the court could determine that the financial statement was not a full disclosure of Edward's worth. Esther's disputed testimony that Edward told her on their wedding night that he was worth six million dollars does not prove by a preponderance of the evidence that the financial statement reflecting a lesser figure was inaccurate or incomplete.

As to the frankness of the financial statement, Esther asserts that Edward was worth almost three times as much as the statement disclosed, while Edward asserts that his stock ownership was overvalued; that is, that the statement overestimated his worth. Since the purpose of the financial statement is to prevent one spouse from designedly concealing property from the other spouse (*Batleman* at 161, 98 S.E.2d at 523), Edward's overestimation of his stock is not the evil which the disclosure requirement seeks to avoid. Edward denied Esther's testimony that he said on their wedding night that he was worth six million dollars. There is no other testimony that Edward owned stock or any other property which he failed to include on his financial statement. Esther fails to prove by a preponderance of the evidence that the statement "designedly concealed" any of Edward's property from her.

The third and last issue is whether the contract was rescinded. Section Eight of the Agreement requires that any modification, amendment or rescission of the Agreement be in writing. There is no written rescission here. Esther fails to show why the court should ignore the express language requiring a written rescission.

Esther argues that the conduct of the parties was an abandonment of the contract. The undisputed conduct includes Edward's statements that he would "take care" of Esther, Edward's assigning a deed of trust note to Esther, Edward's conveying the 5804 Riverside Drive residence to Edward and Esther as tenants by the entirety, Edward's giving Esther a general power of appointment, several wills made by both parties, and the opening of trust and joint checking accounts.

In order to establish abandonment, the conduct must be unequivocal and inconsistent with any intent to be bound by the contract. *Little Beaver Enterprises v. Humphreys Railways*, 719 F.2d 75, 79 (4th Cir. 1983). Edward made statements that he would take care of Esther. Spouses have a legal obligation to take care of each other during marriage whether they say so or not. There was no evidence that Edward covenanted to take care of Esther even if they were not married or for the rest of her life, or that he intended a revocation of the Agreement. Therefore, this court attaches little significance to the statement.

The deed of trust note, the tenancy by the entirety, and the trust and joint checking accounts appear to be gifts from a husband to his wife. Marital gifts are in no way inconsistent with the Agreement. The Agreement provides for such gifts in Section 4. Edward cannot be considered to have revoked the Agreement by doing more than was called for under it. A revocation is conduct which is inconsistent with the Agreement, not that which is consistent with or further benefits the person claiming the revocation. Even the general power of appointment can be seen as a gift. Edward's statement that he gave her the general power because he wanted to make her feel secure establishes a donative intent.

The several wills executed by Edward establish Edward's intent to override the testamentary provisions in the Agreement. Nevertheless, wills are operative only upon the death of the testator; therefore, the divorce provisions of the Agreement remain intact.

Viewing the conduct as a whole does not establish Edward's unequivocal intent not to be bound by the Agreement, nor is the conduct completely inconsistent with any intent to be bound by the Agreement.

Therefore, this court finds the premarital Agreement valid and binding on both of the parties.