## Richmond

DAVID CAPPS, SR. v. PATRICIA DIANE SEAWELL CAPPS.

December 1, 1975.

Record No. 741109.

Present, I'Anson, C.J., Carrico, Harrison, Cochran, Poff and Compton, JJ.

*Howard I. Legum* (*Fine, Fine, Legum & Fine*, on brief), for appellant.

(*Tonita M. Warren*, on brief), for appellee.

Case submitted on brief for appellee.

Per Curiam.

The parties to this appeal are the same as those in the divorce case of *Capps* v. *Capps*, 216 Va. 382, 219 S.E.2d 901, this day decided.

After David Capps, Sr., filed his bill for divorce in the court below, the wife, Patricia Diane Seawell Capps, instituted this suit against him alleging that a certain real property agreement entered into by them is void and unenforceable. The husband filed an answer asserting that

the agreement was valid, and he subsequently filed a "notice of motion" stating that on a certain day he would move the court to require specific performance of the contract. By consent of the parties, and in order to facilitate the proceedings, the chancellor treated the "notice of motion" as a cross-bill for specific performance. After an *ore tenus* hearing, he held the agreement void and unenforceable on the grounds that it was against public policy and lacked mutuality.

The question presented is whether the chancellor erred in holding invalid the written agreement entered into by the parties.

The only testimony presented was that of the husband's former attorney, who stated that in July 1972 the husband advised him of his interest in purchasing the home that the parties had been renting. He stated that the husband requested his advice in the matter because he was apprehensive that his wife might file suit for divorce, as she had done in July 1971, although she voluntarily dismissed that suit five days later. As a result, an agreement was prepared by counsel and entered into by the parties on December 19, 1972.

The pertinent parts of the agreement provide: that the husband would buy the property and pay the purchase price in excess of the mortgage loan; that the wife would become jointly liable on a promissory note secured by a deed of trust in exchange for placing title in the joint names of the parties; that in the event either party should institute "a suit for divorce, a suit for separate maintenance, or any other legal proceedings affecting the marital relationship," the wife would execute and deliver a deed conveying her interest in the property to the husband; that the husband would execute and deliver all documents necessary for him to assume and to pay all indebtedness on the property, and to save the wife harmless from any claims therefor; and that the agreement should not be construed as an agreement to separate, since the parties were then living together with no prospect of separation.

In holding this agreement void as against public policy, the chancellor reasoned that it would discourage the wife from filing a suit for divorce or separate maintenance. He also reasoned that the provision requiring the wife to relinquish her interest in the property in the event either party instituted "legal proceedings affecting the marital relationship" would place her in "almost involuntary servitude" and even prevent her from securing a criminal warrant against her husband for physical abuse, if such occurred. We do not agree with the chancellor's conclusion that the agreement is invalid.

The phrase "public policy" is vague and not susceptible to fixed rules. *Wallihan* v. *Hughes*, 196 Va. 117, 124-25, 82 S.E.2d 553, 558 (1954). However, we have said that it is the policy of the law " 'to foster and protect marriage, to encourage the parties to live together and to prevent separation, marriage being the foundation of the family and of society, without which there would be neither civilization nor progress.' " *Shelton* v. *Stewart*, 193 Va. 162, 166, 67 S.E.2d 841, 843 (1951). It is because of this policy that we have held agreements, either antenuptial or post-nuptial, between husbands and wives, void when they tend to encourage or facilitate separation or divorce. *Cumming* v. *Cumming*, 127 Va. 16, 25, 102 S.E. 572, 575 (1920); *Arrington* v. *Arrington*, 196 Va. 86, 95, 82 S.E.2d 548, 553 (1954). However, we have also said that property settlements, when entered into by competent parties upon valid consideration for lawful purposes, are favored in the law and that we are therefore "averse to holding contracts unenforceable on the ground of public policy unless their illegality is clear and certain." *Wallihan* v. *Hughes, supra,* 196 Va. at 125, 82 S.E.2d at 558 (1954). Thus, the general rule is that agreements between husband and wife relating to the adjustment of property rights, even though in contemplation of divorce, are not violative of established public policy unless collusive or made to facilitate a separation or to aid in procuring a divorce. *Ryan* v. *Griffin*, 199 Va. 891, 896, 103 S.E.2d 240, 244 (1958); *Wife B.T.L.* v. *Husband H.A.L.*, 287 A.2d 413, 415 (Del.Ch. 1972); *Hoyt* v. *Hoyt*, 213 Tenn. 117, 372 S.W.2d 300 (1963); *Hill* v. *Hill*, 23 Cal.2d 82, 88, 142 P.2d 417, 420 (1943).

When the agreement in the case at bar is viewed in light of these principles and the circumstances surrounding its execution, we find that it does not violate public policy.

The agreement points out that the parties are living together as husband and wife and that there is no prospect of a separation. It also provides, however, that if either party institutes proceedings for divorce or separate maintenance the wife must surrender her interest in the property. Thus the agreement, rather than encouraging or facilitating a divorce or separation, tends to promote a continuation of the marriage. Nor do we construe the phrase "or any other legal proceedings affecting the marital relationship," when considered along with the other language of the agreement, to mean that the wife could not seek legal protection for an assault upon her by her husband without forfeiting her interest in the property. That phrase

encompasses only such other legal proceedings as would reach the marital status of the parties and their real property interests.

We also do not agree with the wife's argument and the chancellor's holding that the agreement lacks mutuality because the husband could divest her title to the property at will, simply by filing a bill for divorce.

Generally, "where the consideration for the promise of one party is the promise of the other party, there must be absolute mutuality of engagement, so that each party has the right to hold the other to a positive agreement. Both parties must be bound, or neither is bound." *Vinton v. Roanoke*, 195 Va. 881, 896, 80 S.E.2d 608, 617 (1954); *American Agricultural Chem. Co. v. Kennedy*, 103 Va. 171, 176, 48 S.E. 868, 870 (1904).

The present agreement called for the wife to assume personal liability on the deed of trust note in exchange for a joint interest in the property. Upon the happening of an express contingency, e.g., a suit for divorce or separate maintenance, the wife would surrender her interest in the property, receiving in return an indemnification from her husband as to her liability on the note. While it is true that the wife's interest in the real property could be terminated if the husband filed suit for divorce, it is equally true that she could at any time avoid liability on the note by filing such a suit herself. Hence, both parties were at all times bound to perform their promises, and the agreement does not lack mutuality.

We hold that the agreement is valid and enforceable. Thus, the decree of the chancellor is set aside and reversed and the case remanded for further proceedings not inconsistent with this opinion. The chancellor is directed to grant the husband leave to amend his pleadings to obtain specific performance of the agreement.

*Reversed and remanded.*