Richmond

CAROLYN J. COOLEY

v.

CYRUS E. COOLEY, JR.

February 29, 1980.

Record No. 780373.

Present: I'Anson, C.J., Carrico, Harrison, Cochran, Poff and Compton, JJ.

*Stuart L. Craig* (*Carter, Craig & Bass,* on brief), for appellant.
*John W. Carter* (*Carter and Wilson,* on brief), for appellee.

PER CURIAM.

In this civil appeal, we consider whether a post-nuptial separation agreement and a subsequent contract modifying the agreement were void and unenforceable as facilitating separation or divorce.

Appellant Carolyn J. Cooley, the wife, instituted this proceeding below by motion for judgment against appellee Cyrus E. Cooley, Jr., her former husband, seeking recovery of almost $11,000. The action is based on the husband's alleged failure to comply with the spousal support provisions of a 1971 North Carolina separation agreement as modified by a 1972 North Carolina contract.

After a bench trial, the court below decided that the instruments in question facilitated or promoted the parties' separation or divorce and thus were void as contrary to public policy. We awarded the wife an appeal from the February 1978 judgment order entered in favor of the husband.

Married in 1958 when he was in his mid-thirties and she in her mid-forties, the parties cohabited thereafter in California, Virginia and Georgia. In 1967 they moved to North Carolina where the husband became employed by Burlington Industries. Marital difficulties subsequently arose. According to the husband's testimony, denied by the wife, "she spent about fifty percent of her time in California and the other fifty percent with me" during the period from 1968 to the separation of the parties. The husband stated, "It was not uncommon for her to go [to California] and stay three months at a time, because she had her family out there and left me by myself."

In 1971, when it became apparent to the parties that a separation was inevitable, the wife "insisted" that a written agreement for her support be executed to provide "some security" following the separation. The husband's North Carolina attorney prepared the agreement, and it was executed by the parties on June 16, 1971. The separation occurred on that day, or the day after, when the wife left the marital abode in North Carolina and travelled to California.

The evidence was in conflict as to the precise cause for the separation and whether or not it was to be permanent. The reason assigned by the husband was that she "wanted to live in California more than she did in the Eastern part of the United States." He testified she "deserted" him and he did not expect her to return. When asked whether he wanted her to come back, Cooley replied, "Very frankly, based on everything that occurred up to the point at which she left, I didn't see that it was possible to save our marriage." On the other hand, the wife blamed Cooley for what she thought was to be a temporary separation, stating, "He said he wanted me to go ·Cali-

fornia to see if he missed me and he would have me back on Christmas. . . ."

The agreement recited in an introductory paragraph:

> That whereas, the said Cyrus E. Cooley and Carolyn G. Cooley are lawfully married; and whereas, after said marriage the parties hereto lived together as man and wife, and whereas the said parties hereto are very unhappy and in consequence of the circumstances under which they are now living it is reasonably necessary to the health and happiness of both of said parties that they should live separate and apart; and whereas, in consequence of existing conditions it has been decided by the parties hereto that it is to the best interest of all concerned for the parties hereto to make and enter into an agreement of separation . . . .

The instrument required the husband to pay her $350 per month for support and required him to maintain a group medical benefits insurance policy covering her. The agreement also adjusted property rights between the parties, provided for the release of curtesy and dower, and released the husband from any other obligation to pay "support, maintenance, or alimony" in the future.

Following the separation, the husband proceeded to make support payments in accordance with the agreement. The wife remained in California until the Spring of 1972 when she returned to North Carolina. According to her testimony, this was an unsuccessful attempt to effect a reconciliation. When she reached the marital abode, Cooley refused to converse with her, merely saying, "You leave." He denied her return was motivated by a desire to reconcile; he stated she came back to obtain some personal belongings and to pick up his daughter by a previous marriage who was "just getting out of school." After a brief period of time, the wife went back to California accompanied by the daughter.

On June 27, 1972, the husband filed suit in North Carolina for an absolute divorce against the wife upon the ground that the parties had lived separate and apart for one year. The divorce papers were served on the wife only in California and she made no appearance in the North Carolina court. She consulted California counsel who contacted Cooley's North Carolina attorney seeking an increase in spousal support. Over five months of negotiations ensued, the husband wanting a final uncontested divorce and the wife desiring an agreement which would adequately provide for her future support and maintenance. Finally, the parties executed a contract dated December 15, 1972

modifying the separation agreement and, *inter alia,* providing for an increase in the wife's monthly support. Among the prefatory statements in the writing was the following:

WHEREAS, Carolyn J. Cooley hereby agrees that Cyrus E. Cooley, Jr. may secure a divorce without contest by Carolyn J. Cooley, in consideration for the modification of the original separation agreement, as herein provided.

Four days later, the North Carolina court entered a decree dissolving the marriage on the ground that the parties had lived continuously separate and apart since June 16, 1971.

The husband, who had remarried in 1973, left the employ of Burlington Industries in 1975 and moved to Virginia where he went to work for Dan River Mills, Incorporated. He stopped making the agreed support payments in December of 1975. The present action was filed in July of 1977 seeking judgment for arrearages allegedly due for support and medical expenses through June 15, 1977.

Because it is the policy of the law to foster marriage and to prevent separation, an agreement between husband and wife is void when its general purpose or specific object is to encourage or facilitate separation or divorce. *Shelton* v. *Stewart,* 193 Va. 162, 165, 67 S.E.2d 841, 843 (1951); *Cumming* v. *Cumming,* 127 Va. 16, 25, 30, 102 S.E. 572, 574, 576 (1920). *See Capps* v. *Capps,* 216 Va. 378, 380, 219 S.E.2d 901, 903 (1975). But marital property settlements entered into by competent parties upon valid consideration for lawful purposes are favored in the law and such will be enforced unless their illegality is clear and certain. *Wallihan* v. *Hughes,* 196 Va. 117, 125, 82 S.E.2d 553, 558 (1954). Consequently, agreements between spouses dealing with a division of property, even though in contemplation of divorce, are valid unless part of a scheme to effect a separation or to obtain a divorce by collusion. *Ryan* v. *Griffin,* 199 Va. 891, 896, 103 S.E.2d 240, 244 (1958).

We reject the husband's contention that the two instruments here are void as violative of public policy. As to the 1971 agreement, the parties had experienced marital difficulties for nearly three years before its execution. Because of the discord, the husband and wife recognized that a separation was unavoidable. Indeed, the preamble of the agreement, drafted by the husband's attorney, recited the "unhappy" conditions and the necessity to separate for "the health and happiness of both" parties. The agreement was merely an attempt by the estranged couple to adjust mutual rights and obligations preliminary to the actual

separation which took place immediately; the instrument was not part of a device or scheme to promote a divorce nor was its general purpose · or specific object to facilitate a separation.

As to the 1972 contract, the enmity had existed unabated for an 18-month period following the June 1971 separation. Actually, the discord had been intensified by the wife's efforts to exact increased support payments and other monies from the husband. During the prolonged negotiations following institution of the divorce action, there was no dispute that the parties had been separated for one year and that the husband had valid grounds for an absolute divorce. The quarrel at that time was simply over money and was fueled by his desire for an uncontested divorce. The prefatory clause, *supra,* heavily relied on by the husband to support his contention that the contract was void, principally related to the promise of the wife not to contest the issue of spousal support in the divorce court in consideration for the modification of the original agreement. According to the evidence, she had no defense to the one-year separation charge; the ground for the divorce pre-existed the contract and had already become irrevocably fixed. Consequently, the general purpose of the contract, like the agreement, was to adjust the property rights; facilitation of the divorce was not its specific object.*

For these reasons, we conclude that the trial court erred in deciding the separation agreement and the contract were void. Accordingly, the judgment below will be reversed and the case remanded for a new trial limited to the issue of damages only.

*Reversed and remanded.*

---

* Although mentioned in her appellate briefs, the wife did not urge during oral argument before us, nor before the trial court, according to the record, that the validity, effect and enforceability of the instruments should be governed by North Carolina law. Consequently, we have not commented on any conflict of laws issue.