**Richmond**

JEANNE G. DEXTER

v.

JOHN B. DEXTER

Record No. 1305-86-4

Decided September 6, 1988

COUNSEL

Mark A. Barondess (Sandground, Barondess & West, P.C., on brief), for appellant.

Richard J. Byrd (Moshos, Byrd, McClue, DeDeo & Mische, P.C., on brief), for appellee.

OPINION

**KOONTZ C.J.** — Jeanne G. Dexter filed a bill of complaint on February 17, 1984, seeking spousal support and a divorce from John B. Dexter on the ground of desertion. Thereafter, Mr. Dexter filed an answer and cross-bill seeking a divorce on the ground of desertion to which Mrs. Dexter filed an answer denying her desertion. Subsequently, Mrs. Dexter, without objection, was permitted to amend her bill of complaint to seek a no fault divorce on the ground of a one year separation. No issues of equitable distribution under Code § 20-107.3 are raised in this appeal.

On April 1, 1985, the trial court heard evidence pursuant to a *Motion for Maintenance Pendente Lite* in which Mrs. Dexter sought the enforcement of an agreement between the parties executed on March 6, 1975, providing for the payment to Mrs. Dexter of $1,000 per month from the date of any separation or divorce. By letter opinion dated July 16, 1985, Judge Jack B. Stevens ruled that the agreement was invalid; this ruling was incorporated into an order entered on September 6, 1985.[1]

By order entered on August 14, 1985, the suit was referred to a commissioner in chancery who conducted an *ore tenus* hearing on February 11, 1986. On July 8, 1986, the commissioner filed his report in which he found Mrs. Dexter guilty of desertion. He recommended, however, that Mrs. Dexter be granted a final divorce on the ground of a one year separation, as provided in Code § 20-91(9). Subsequently, the trial court overruled Mrs. Dexter's exceptions to the commissioner's report by letter opinion dated September 16, 1986.[2] By decree entered on October 7, 1986, the court granted a final divorce to Mr. Dexter from Mrs. Dexter on the ground of a one year separation. The decree further provided that Mrs. Dexter deserted Mr. Dexter and that "there are no payments of support as between the parties." This appeal followed.

---

[1] The record also contains an order dated April 3, 1984, entered by Judge Thomas J. Middleton, awarding Mrs. Dexter support *pendente lite* of $600 per month beginning April 1, 1984. This order apparently remained in force until the entry of the final divorce decree.

[2] Judge Jack B. Stevens rendered this opinion. Judge Lewis Hall Griffith entered the final decree of divorce. While no waiver entered of record is included in the record before us, the applicable provisions of Code § 17-116.4, requiring a judge who has heard part of a case on its merits to hear the case to its conclusion, are not raised in this appeal.

Mrs. Dexter raises the following issues: (1) whether the trial court erred in finding her guilty of desertion; and (2) whether the trial court erred in declaring the support agreement invalid. For the reasons that follow, we hold that the trial court erred in finding Mrs. Dexter guilty of desertion but did not err in declaring the agreement invalid.

## I. Factual Background

The parties were married on March 1, 1975, shortly after divorcing their prior spouses. No children were born to this marriage. The disputed support agreement was executed on March 6, 1975.

Based on our review of the transcripts of the various hearings in this case, the parties apparently lived happily together for the first several years of their marriage. Mr. Dexter retired from his position as a foreign service officer with the Department of State in January, 1980. Mrs. Dexter was not employed during those years. After Mr. Dexter's retirement, Mrs. Dexter became employed as a realtor. For reasons unclear from the record, domestic difficulties developed between the parties which culminated in the summer of 1983. In July, 1983, Mr. Dexter went to Montana to attend a conference and to fish. During that time the parties discussed their relationship through telephone calls and letters written by Mr. Dexter. In those letters, Mr. Dexter expressed his love for Mrs. Dexter and some jealousy over her relationship with her sons from her prior marriage.

Upon his return from this trip in August, Mrs. Dexter advised Mr. Dexter that she "wanted a period of time by myself as he had had periods of time by himself." She admittedly moved from the marital bedroom and thereafter the parties maintained separate bedrooms. Mr. Dexter's account of the events surrounding his return from Montana was that Mrs. Dexter "was very cold and not receptive to my arrival." He testified that Mrs. Dexter advised him that "I've decided I have to get out and live alone." He proposed that they seek marriage counseling, which she declined. Mr. Dexter then participated in counseling with William Baxter alone with the exception of one or two occasions on which Mrs. Dexter had a conference separately with Mr. Baxter.

Sometime during this period, Mrs. Dexter discovered that she had breast cancer and underwent an operation and treatment for her condition. Upon her return from the hospital in late September, and following a discussion with Mrs. Dexter's son, Mr. Dexter decided that he would move from the marital residence. He testified: "I decided that in view of the cancer and the illness that she was going through and since the marriage had ended, since she had chosen not to continue the marriage, there was nothing that I could do about it and therefore I would not subject her to the stress and anxiety and the effort of a physical move." Mr. Dexter further testified that he did not intend the separation to be permanent, but rather that "I could have let her move but I thought I'd spare her the trouble." Mrs. Dexter testified that thereafter she made the necessary arrangements to secure an apartment into which Mr. Dexter moved on October 4, 1983. The parties remained separated after that date.

In addition to the testimony of the parties, the court received the testimony of Richard Rebh, Mrs. Dexter's son, and William Baxter, the marriage counselor. Pertinent to the issue of fault, Mr. Rebh testified that he came from California to Virginia during the time his mother was in the hospital. He talked with his mother and Mr. Dexter about their marital situation and concluded that "the parties agreed amicably to live separately at that time." Mr. Rebh testified that he met with Mr. Dexter and Mr. Baxter as a favor to Mr. Dexter. Mr. Rebh testified that following that meeting "I came out of that room with the consensus that the group had decided that what John should do would be to go to mother and say, 'I'm happy to do whatever you think is appropriate. I think its up to you to make the decision of whether I move out or whether you move out or if we both move out. Clearly there needs to be a physical separation at this time primarily because of your medical condition so that you can recover appropriately.' " Mr. Rebh also testified that he felt Mr. Dexter would like the marriage to be preserved.

William Baxter testified that after meeting individually with both parties, he concluded Mrs. Dexter was not interested in continuing the marriage and Mr. Dexter wanted to restore the marriage. He did not testify as to any reasons for or explanations of the marriage difficulty.

## II.  The Desertion Issue

"Under familiar principles, we may not disturb the findings of the chancellor where they are supported by credible evidence." *Shaughnessy v. Shaughnessy*, 1 Va. App. 136, 138-39, 336 S.E.2d 166, 168 (1985). "Where the evidence is heard by a commissioner and not *ore tenus* by the trial court, the decree is not given the same weight as a jury verdict, but if the decree is supported by substantial, competent and credible evidence, it will not be overturned." *McLaughlin v. McLaughlin*, 2 Va. App. 463, 466, 346 S.E.2d 535, 536 (1986)(citations omitted); *see* Code § 8.01-680.

In his report to the chancellor, the commissioner first concluded that "the marital difficulties between the parties hereto surfaced at least during the mid-summer of 1983. What they consisted of and how long they had persisted is not clear from the evidence." The commissioner then recited the occurrences of that summer and concluded that Mrs. Dexter desired an "immediate separation." He further concluded that Mrs. Dexter had formulated "a definite intention to separate, terminate the marriage, and secure the removal of [Mr. Dexter] from the marital domicile." Based upon Mrs. Dexter's statements to Mr. Dexter of her desire to separate, her removal of herself from the marital bedroom, the termination of sexual relations, and her actions in securing an apartment for Mr. Dexter, the commissioner found that on October 4, 1983, Mr. Dexter "voluntarily left the marital residence" and that Mrs. Dexter had "in effect forced him to leave." Relying on *Carter v. Carter*, 199 Va. 79, 97 S.E.2d 663 (1957), the commissioner concluded for these reasons that Mrs. Dexter had not shown that Mr. Dexter's conduct had "rendered it impossible for her to live with him in safety and in the reasonable peace and accord that should adhere in the marriage state," and therefore, Mrs. Dexter was guilty of desertion. By letter opinion dated September 16, 1986, the chancellor affirmed the findings of the commissioner.

The gist of Mr. Dexter's argument below and on appeal is that Mrs. Dexter had determined that she wanted to end the marriage and that his leaving the marital home on October 4, 1983, was simply an effort to "do the right thing — the gentlemanly thing" by not subjecting Mrs. Dexter to more stress and anxiety given her medical condition or to the physical effort of having to remove

herself from the marital home to effectuate the separation she desired. In short, he argues, as the commissioner found, that Mrs. Dexter's desertion was complete before he moved from the marital home and he was therefore justified in leaving. We hold that the finding of the commissioner, affirmed by the chancellor, that Mrs. Dexter deserted Mr. Dexter was not supported by the credible evidence; that because Mrs. Dexter did not assert that Mr. Dexter deserted her, the justification for his leaving the marital home was not in issue; and that the commissioner's reliance on *Carter* was misplaced.

" 'Desertion is a breach of matrimonial duty, and is composed first, of the actual breaking off of the marital cohabitation, and secondly, an intent to desert in the mind of the offender. Both must combine to make the desertion complete.' " *Zinkhan v. Zinkhan*, 2 Va. App. 200, 205, 342 S.E.2d 658, 660 (1986)(quoting *Nash v. Nash*, 200 Va. 890, 893, 108 S.E.2d 350, 352 (1958)). "The 'matrimonial cohabitation' consists of more than sexual relations. It also imports the continuing condition of living together and carrying out the mutual responsibilities of the marriage relationship. A mere denial of sexual intercourse, where other marital duties are performed, does not constitute desertion." *Petachenko v. Petachenko*, 232 Va. 296, 299, 350 S.E.2d 600, 602 (1986)(citation omitted). "The burden of proving desertion should be by a preponderance of the evidence." *Bacon v. Bacon*, 3 Va. App. 484, 490, 351 S.E.2d 37, 40-41 (1987).

The law is settled that desertion as a ground for divorce does not depend on which spouse actually leaves the family home, *Zinkhan*, 2 Va. App. at 208, 342 S.E.2d at 662, and that desertion may occur within the family home or "under the same roof." *See, e.g., Jamison v. Jamison*, 3 Va. App. 644, 647, 352 S.E.2d 719, 721 (1987); *Goodwyn v. Goodwyn*, 222 Va. 53, 55, 278 S.E.2d 813, 814 (1981) *Chandler v. Chandler*, 132 Va. 418, 431-32, 112 S.E. 856, 860 (1922). Desertion within the family home requires proof of conduct involving the willful breach and neglect of significant marital duties in addition to sexual relations which results in the "[practical destruction of] home life in every true sense, and . . . render(s) the marriage state well nigh intolerable and impossible to be endured." *Chandler*, 132 Va. at 430-31, 112 S.E. at 861.

With these principles in mind, we review the evidence in the light most favorable to Mr. Dexter. Significantly, as noted by the commissioner, the reasons for the parties' marital difficulties can not be gleaned from the record. Without this factual background, which undoubtedly would have clarified the conduct and testimony of the parties concerning the marital relationship that existed between them in the summer of 1983, the risk of viewing the evidence out of context is apparent. We believe the absence of such evidence resulted in the error in this case.

What is clear, as found by the commissioner, is that Mrs. Dexter desired a separation and expressed that desire to Mr. Dexter upon his return from Montana in August, 1983. We will assume that this desire included the desire to terminate the marriage, although that is not clear from the record. The desire to separate, even to terminate the marriage, however, is not synonymous with an intent to "desert" the marriage. The intent to desert the marriage connotes fault and excludes the concept of a mutual agreement to separate. Code § 20-91(9)(a) embodies the legislative recognition of the regrettable fact of human experience that for various reasons parties determine to terminate their marriage. This code section provides for a "no-fault" divorce where the parties have lived separate and apart without any cohabitation and without interruption for a period of one year.[3] The significance of fault, such as desertion, under the law existing at the time of this suit was that fault was a bar to spousal support. Code § 20-107.1.[4] In this context, Mrs. Dexter's expressed desire to terminate the marriage did not alone at that point constitute desertion. Mr. Dexter was required to prove by a preponderance of the evidence conduct by her evidencing a willful breach and neglect of significant marital duties that rendered the marriage state well neigh intolerable and impossible to be endured by him. "Mere separation by mutual consent is not a desertion by either party." *Arrington v. Arrington*, 196 Va. 86, 91, 82 S.E.2d 548, 551 (1954).

---

[3] A final divorce also may be granted under Code § 20-91 where the parties have entered a separation agreement, there are no natural or adopted children, and the parties have lived separate and apart for a period of six months.

[4] The 1988 amendment to Code § 20-107.1 removed fault as a bar to spousal support except for adultery, sodomy or buggery committed outside the marriage. The court may nonetheless, in its discretion, award spousal support when it determines that a denial of support would constitute a manifest injustice.

In this regard, while it is clear that sexual relations ceased, the record is silent as to what other marital "duties or responsibilities" were or were not performed by Mrs. Dexter. Furthermore, the record is silent as to what other marital duties or responsibilities Mr. Dexter expected Mrs. Dexter to perform. Mr. Dexter simply testified that "I wasn't forcing the sex on her" and undoubtedly her medical condition would have reasonably caused some continuation of the cessation of sexual relations.

In addition, the commissioner's finding that Mrs. Dexter's actions in securing an apartment for Mr. Dexter had "in effect forced him to leave" is not supported by the evidence and is inconsistent with the commissioner's finding that Mr. Dexter "voluntarily left the marital residence." Mr. Dexter did not testify that he was "forced" to leave. Rather, he testified that he left voluntarily because he wanted to do the "gentlemanly thing." His testimony that he did not want to subject Mrs. Dexter to more stress and anxiety or the physical effort in removing herself from the marital home is not consistent with being forced to leave. In addition, the testimony of Richard Rebh corroborates the fact that Mr. Dexter made the decision to voluntarily leave the marital residence rather than a finding that he was forced to leave by the conduct of Mrs. Dexter. Finally, Mrs. Dexter made the arrangements for this apartment after Mr. Dexter decided to leave. Under these circumstances, Mr. Dexter's decision to leave the marital residence, based on his stated reasons for it, is understandable and perhaps was even the "gentlemanly thing" to do, but in the context of this case he cannot be permitted to successfully assert those same reasons as a basis for a claim of desertion by Mrs. Dexter.

We briefly address the commissioner's finding that Mrs. Dexter had not shown that Mr. Dexter's conduct "rendered it impossible for her to live with him in safety and in reasonable accord that should adhere to the marriage state." This language appears in *Carter*, 199 Va. at 84, 97 S.E.2d at 667. The entire passage from *Carter* supports our conclusion that the commissioner's reliance on this case was misplaced. The Court stated: "If a wife is run away from home by her husband, or if he so behaves as to render it impossible for her to live with him in safety and in the reasonable peace and concord that should inhere in the marriage state, she is not guilty of desertion when she leaves for those reasons." *Id.* Suffice it to reiterate that Mrs. Dexter does not assert that Mr.

Dexter deserted her when he left the marital residence. Nor does she claim that he was at fault in the termination of the marriage relationship within or without the marital residence. Without such an assertion it is not surprising that she did not show that Mr. Dexter's conduct rendered it impossible for her to live with him. Furthermore, it would have been nonsensical for Mr. Dexter to produce evidence of his conduct that might have rendered it impossible for her to live with him in support of his claim that she was the deserter.

For these reasons, we hold that the finding of the commissioner, and affirmed by the chancellor, that Mrs. Dexter deserted Mr. Dexter is not supported by substantial, competent and credible evidence and we reverse that part of the final decree so holding. The credible evidence supports only that the parties mutually agreed to separate and the finding by the chancellor that Mr. Dexter was entitled to a final decree of divorce based on their living separate and apart without any cohabitation and without interruption for a period of one year.

### III. The Support Agreement Issue

Because we hold that Mrs. Dexter did not desert Mr. Dexter, and upon remand to the trial court she will be entitled to a merits determination of her spousal support claim pursuant to Code § 20-107.1, it is necessary to stress the procedural context in which the issue of the validity of the support agreement in question arose to explain why this issue is not dispositive of her spousal support claim.

On March 13, 1984, Mrs. Dexter gave notice to Mr. Dexter for a hearing to be held on March 23, 1984, on her motion for support *pendente lite*. In that motion, Mrs. Dexter sought support in the amount of $1,000 per month based upon the agreement executed by the parties on March 6, 1975. The record contains an order entered on April 3, 1984, by Judge Thomas J. Middleton, awarding support to Mrs. Dexter in the amount of $600 per month beginning April 1, 1984, based on *ore tenus* evidence heard on that date. That order remained in full force and effect until the final divorce decree was entered on October 7, 1986. That decree, entered by Judge Lewis Hall Griffin, provided "there are no payments of support as between the parties." In the interim, by

agreement, the parties submitted the issue of the validity of the March 6, 1975, agreement to the court.[5] Judge Jack B. Stevens heard evidence *ore tenus* on this issue on April 1, 1985, and by letter opinion dated July 16, 1985, ruled that the agreement lacked consideration by Mrs. Dexter and was invalid because it encouraged or facilitated separation or divorce under the reasoning of *Cumming v. Cumming*, 127 Va. 16, 102 S.E. 572 (1920). Judge Stevens' ruling was incorporated into an order entered on September 6, 1985. This order made no reference to the prior *pendente lite* order and by its terms did not terminate the current support being paid to Mrs. Dexter. In this context and in light of our holding that Mrs. Dexter did not desert Mr. Dexter, the trial court's determination that the agreement was invalid is not dispositive of the issue of spousal support. Without an agreement, the spousal support issue must be determined on its merits pursuant to Code § 20-107.1.

For these reasons and because of significant pertinent statutory changes in the law concerning marital agreements enacted since the trial court's ruling in this case, we decline to review in depth the case law cited in support of and in opposition to the parties' agreement.

We initially note that Mr. Dexter's contention that Mrs. Dexter has not timely filed an appeal on this issue is without merit. He argues that the time for filing the appeal began with the entry of the October 6, 1985, order that held the agreement invalid. In the procedural context in which the question of the validity of this agreement arose, i.e., *pendente lite* support, the October 6, 1985 order was not a final order appealable to this court. Nor was it an interlocutory order granting, dissolving or denying an injunction. Code § 17-116.05. *Pendente lite* support orders are not appealable to this court. Rather, the final decree of divorce entered on October 7, 1986, which awarded no spousal support to Mrs. Dexter and in effect affirmed the prior ruling that the agreement was invalid, was the decree from which Mrs. Dexter could and did properly appeal.

We turn now to the issue of the validity of the agreement. In pertinent part it provides: that the parties were married on March

---

[5] *See* Code §§ 20-109 and 20-109.1 concerning the effects of valid written agreements regarding spousal support filed by the parties.

1, 1975, that the wife was receiving $1,000 per month spousal support from her prior husband, that the parties are happily married and expect to continue to be married, and that "husband desires to insure wife's continued support and well-being; and therefore, agrees that if the marriage between husband and wife is terminated by separation of [sic] divorce, husband will commence to pay wife $1,000 per month from the date of separation or divorce." This agreement was executed on March 6, 1976, five days after the parties were married. They separated on October 4, 1983.

We agree with the chancellor that this postnuptial agreement was invalid for lack of consideration by Mrs. Dexter. Once married to Mr. Dexter, she no longer had a right to support from her prior husband and consequently she neither forfeited a right nor made a mutual promise in exchange for Mr. Dexter's promise of support. Accordingly, we hold the chancellor did not err in ruling the agreement invalid.

The parties cite numerous familiar cases concerning prenuptial and postnuptial agreements in which our Supreme Court has approved or disapproved such agreements based primarily on the principles of public policy to foster marriage and to invalidate agreements that have as their object to encourage or facilitate separation or divorce. *See, e.g., Cooley v. Cooley,* 220 Va. 749, 263 S.E.2d 49 (1980); *Capps v. Capps,* 216 Va. 378, 219 S.E.2d 901 (1975); *Arrington v. Arrington,* 196 Va. 86, 82 S.E.2d 548 (1954); *Cumming v. Cumming,* 127 Va. 16, 102 S.E. 572 (1920).

With the enactment of the Virginia Premarital Agreement Act, Code §§ 20-147 to 154, effective July 1, 1986, parties are permitted to contract with respect to, *inter alia,* spousal support and such contracts are enforceable without consideration. In 1987, Code § 20-155 was enacted to permit married persons to enter such contracts to the same extent as prospective spouses, "except that such marital agreements shall become effective immediately upon their execution." Thus, since the present case was decided by the trial court the legislature has made a significant change in the law concerning marital agreements and specifically, consideration is not required. Code § 20-149.

In our view, these legislative changes were forecast in *Capps.* There, the Supreme Court stated:

The phrase "public policy" is vague and not susceptible to fixed rules . . . . However, we have said that it is the policy of the law " 'to foster and protect marriage, to encourage the parties to live together and to prevent separation, marriage being the foundation of the family and of society, without which there would be neither civilization nor progress . . . .' " It is because of this policy that we have held agreements, either antenuptial or post-nuptial, between husbands and wives, void when they tend to encourage or facilitate separation or divorce. However, we have also said that property settlements, when entered into by competent parties upon valid consideration for lawful purposes, are favored in the law and that we are therefore "averse to holding contracts unenforceable on the ground of public policy unless their illegality is clear and certain." Thus, the general rule is that agreements between husband and wife relating to the adjustment of property rights, even though in contemplation of divorce, are not violative of established public policy unless collusive or made to facilitate a separation or aid in procuring a divorce.

216 Va. at 380, 219 S.E.2d at 903 (citations omitted).

Subsequently in *Cooley*, the Court continued the trend of encouraging marital settlements and upheld a postnuptial agreement for spousal support as not having been entered into for the purpose of encouraging or facilitating separation or divorce. The Court noted that when the agreement was first executed, the parties had experienced marital difficulties for three years and recognized that a separation was unavoidable, and when it was later amended, grounds for divorce already existed. 220 Va. at 752-53, 263 S.E.2d at 52.

In the present case, decided prior to the enactment of Code § 20-155, since we hold that the agreement lacked consideration, we need not attempt to resolve what Professor Peter N. Swisher so aptly referred to as "judicial uncertainty in defining what would constitute *valid* divorce planning in antenuptial and postnuptial agreements as opposed to *invalid* divorce promotion or facilitation." Swisher, *Domestic Relations Survey*, 21 U. Rich. L. Rev. 745, 746 (1987). It is apparent, however, that for approximately seven years Mrs. Dexter held an agreement executed during the

honeymoon days of her marriage, when no separation was contemplated, no grounds for divorce existed, and which surely, if held to be valid, would have facilitated her seeking a divorce to commence the payment of the specified support to her. Thus, we do not disagree with the trial court's determination that the agreement promoted or facilitated divorce and was invalid. We can only assume that Mr. Dexter, in asserting the agreement's invalidity, prefers the issue of spousal support to be controlled solely by the provisions of Code § 20-107.1.

In summary, we hold that the commissioner's and the trial court's finding of desertion by Mrs. Dexter was not supported by substantial, competent and credible evidence. We further hold that the agreement of March 6, 1975, was an invalid postnuptial agreement. We reverse that part of the final decree that found Mrs. Dexter guilty of desertion and remand this case to the trial court for further determination of Mrs. Dexter's claim for spousal support pursuant to Code § 20-107.1. In all other respects the final decree of divorce is not disturbed.

*Reversed in part,*
*affirmed in part,*
*and remanded.*

Benton, J., and Cole, J., concurred.