COURT OF APPEALS OF VIRGINIA


Present:  Judges Benton, Bumgardner and Agee
Argued at Alexandria, Virginia


JEAN HALL RUTHERFOORD, F/K/A
 JEAN HALL SCOTT

                                    MEMORANDUM OPINION[*] BY
v.    Record No. 2262-01-4      JUDGE RUDOLPH BUMGARDNER, III
                                         AUGUST 6, 2002
JAMES F. SCOTT


            FROM THE CIRCUIT COURT OF ALBEMARLE COUNTY
                    Edward L. Hogshire, Judge

         James Ray Cottrell (Christopher W.
         Schinstock; Kyle F. Bartol; Gannon &
         Cottrell, P.C., on briefs), for appellant.

         Bernard J. DiMuro (Jonathan R. Mook; DiMuro,
         Ginsberg & Mook, P.C., on brief), for
         appellee.


     Jean Hall Rutherfoord appeals the denial of her motion to

incorporate a visitation and child support agreement into the

divorce decree.  The mother contends the trial court erred in

finding the agreement was not in the best interests of the

children, violated public policy, and was not enforceable.  We

conclude the trial court could find the agreement was not in the

best interest of the children and upon that finding properly

deny the motion to incorporate.  However, the finding that the

agreement was not in the best interests of the children did not

     * Pursuant to Code § 17.1-413, this opinion is not
designated for publication.

require the further holding that the agreement was unenforceable because it violated public policy.  Accordingly, we affirm the decision to deny the motion to incorporate the agreement but reverse the decision to the extent it rules the contract is void.

Jean Hall Rutherfoord and James F. Scott married in 1980 and had two children, a son born in 1981 and a daughter born in 1983.  They divorced September 30, 1986 while both parties still resided near Charlottesville.  The final decree incorporated a separation agreement that established shared custody of the children, and spousal and child support for the mother of $10,000 per month for ten years.  After the mother remarried in 1989, the parties agreed to reduce the father's child support obligation to $500 per month per child plus certain specified expenses.

The mother and the children moved to Washington, D.C. in 1995.  The parties again reached agreement on visitation and custody.  In June 1996, the father purchased a home in Washington.  In July 1996, the trial court increased the child support to $1,000 per month per child, and in November 1996, it granted sole custody to the mother and established a detailed schedule for visitation.  The visitation increasingly became a problem.  In December 1997 and March 1998, the trial court modified visitation and each time reduced the amount and

-

increased the restrictions. Under the last order, the children were permitted to decline the visits with their father.

Dissatisfied with the visitation permitted by the trial court, the father directly contacted the mother's attorney to explore ways to increase his visitation. The mother's attorney felt the disparity between the father's income, which was $2,500,000 annually, and the mother's created tensions that damaged his relations with his children. The attorney suggested that the father increase his support for the children, and they began negotiations that resulted in the agreement dated August 1998 that the mother sought to incorporate.

The agreement defined a precise visitation plan addressing summer vacations, holidays, school vacations, and weekends, which gave the father more visitation time than the existing court decree. If the children completed the monthly visitation, the next month the father would pay to the mother $10,000 per child as child support. The sums were considerably more than previously ordered by the trial court, but the agreement specified the father could not withhold payment of the amount set by the court. If all visitation occurred, the father would further pay "lump sum child support" of $1,000,000 to the mother when the younger child entered college.

The father and children initially complied with the agreement. In February 1999, the father brought suit in Washington, D.C. to invalidate the agreement and compel return

-

of $120,000 paid under the contract. The mother then initiated this proceeding in Albemarle County to have the agreement incorporated into the divorce decree. The father objected to her motion and asserted that he signed the agreement under duress, it lacked consideration, and it was void as against public policy. Although the parties now reside in the District of Columbia, the District of Columbia court has stayed its proceeding concerning the validity of the contract pending the outcome of this proceeding in Albemarle County to incorporate the agreement.

The trial court found the father did not act under duress. In a letter opinion, it expressed great concern "for the position in which the children find themselves as a result of the economic conditions expressed in the Agreement." By order, the trial court denied the motion to incorporate the agreement into the divorce decree.

We conclude that the evidence supported a finding that the agreement was not in the best interest of the children. The trial court found "the Agreement raises concerns about coercion and duress, which were undoubtedly not in the best interest of the children." That finding constituted a sufficient basis for the trial court to deny the motion to incorporate the agreement.

However, once the trial court made a finding sufficient to deny the motion to incorporate the agreement, it was unnecessary

-

to make further findings and void the contract as an additional basis for rejecting incorporation of the agreement.

> Public policy has its place in the law of contracts, -- yet that will-o'-the-wisp of the law varies and changes with the interests, habits, need, sentiments and fashions of the day, and courts are averse to holding contracts unenforceable on the ground of public policy unless their illegality is clear and certain.

Wallihan v. Hughes, 196 Va. 117, 125, 82 S.E.2d 553, 558-59 (1954) (separation agreement which facilitated divorce would be void in Virginia, but foreign decree incorporating it entitled to full faith and credit in Virginia) (citations omitted). The presumption is against finding contracts void on public policy grounds. See Capps v. Capps, 216 Va. 378, 380, 219 S.E.2d 901, 903 (1975); Dexter v. Dexter, 7 Va. App. 36, 48, 371 S.E.2d 816, 822 (1988); Parra v. Parra, 1 Va. App. 118, 128, 336 S.E.2d 157, 162 (1985) (noting settlements "'will be enforced unless their illegality is clear and certain'" (quoting Cooley v. Cooley, 220 Va. 749, 752, 263 S.E.2d 49, 52 (1980))). We reverse that portion of the trial court's finding that the agreement was void as against public policy because the ruling was not necessary to resolve the issue before the court.[1]  Consequently, we do not

---

[1] At the time the trial court issued its letter opinion March 1, 2001, two cases had recently held that agreements were void if they were found not to be in the best interests of the child. Riggins v. O'Brien, 34 Va. App. 82, 538 S.E.2d 320 (2000) (decided Dec. 12, 2000); Shoup v. Shoup, 34 Va. App. 347, 542 S.E.2d 9 (2001) (decided Feb. 27, 2001). Both decisions were changed after the trial court ruled in this case. On

-

address the issue of whether the agreement is void as against public policy.

Accordingly, we affirm the result reached by the trial court.

Affirmed.

_____

rehearing en banc, this Court upheld the Shoup agreement, Shoup v. Shoup, 37 Va. App. 240, 556 S.E.2d 783 (2001) (en banc). In Riggins v. O'Brien, 263 Va. 444, 559 S.E.2d 673 (2002), the Supreme Court rejected the finding that the decree incorporating a support agreement was void.

-