## CIRCUIT COURT OF HENRICO COUNTY

Michelle Marie McEwen

v.

William R. H. McEwen, III

November 27, 2002

Case No. CH02-871

BY JUDGE CATHERINE C. HAMMOND

This matter is before the court on cross-motions for relief pendente lite, pursuant to Va. Code § 20-103 (2002). Mrs. McEwen moves for custody of her son and exclusive use and possession of the marital home. Mr. McEwen moves for a temporary injunction ordering that he have exclusive use of the home, custody of his son, child support, and attorney's fees. The court has considered the pleadings, the evidence heard ore tenus, and the arguments of counsel. For the reasons that follow the court denies the cross-applications for exclusive use and possession of the home.

The parties married in 1998 and had one child, Will. Both parents are actively involved in Will's care and understand and meet his needs. Both are well educated and employed outside the home. Both contribute financially to the well being of the family, although the mother provides substantially more of the financial support. They continue to reside together in the home they have shared since the marriage began. There is no evidence of assault, battery, threats, abuse, or even serious insult. There is just hostility. The motions are based predominantly on the fact that Mrs. McEwen wants her husband to move out of the home, which she purchased separately in 1995, and Mr. McEwen does not want to move. The tension is increased by the fact that Mrs. McEwen wants to relocate to Virginia Beach. The evidence was persuasive that she needs to make this change in order to preserve her employment and income.

This situation is presented with some frequency in motions for pendente lite relief. The parties are unwilling, unable, or not ready to separate physically and they seek the court's assistance in forcing the separation. The legal issue is whether, in this situation, this court can or should award exclusive use and possession of the home to one spouse where there is no evidence of misconduct by one or the other.

The authority asserted by Mrs. McEwen is the pendente lite statute, subsection A of Section 20-103. It provides that "the court having jurisdiction of the matter may, at any time pending a suit pursuant to this chapter, in the discretion of the court, make any order that may be proper ... (vi) for the exclusive use and possession of the family residence during the pendency of the suit...." Va. Code § 20-103(A) (2002).

Traditionally, pendente lite relief is in the nature of emergency, intermediate relief pending a final hearing. Pendente lite orders are discretionary and can be changed while the divorce action is pending. The orders have "no presumptive effect and shall not be determinative when adjudicating the underlying cause." Va. Code § 20-103(E) (2002). Pendente lite support orders are interlocutory and generally not appealable. *Beatty v. Beatty*, 105 Va. 213, 53 S.E. 2 (1906); *Pinkard v. Pinkard*, 12 Va. App. 848, 407 S.E.2d 339 (1991). Final disposition of the property issues, including the distribution of the marital home upon entry of the divorce decree, are not decided pendente lite. See *Taylor v. Taylor*, 5 Va. App. 436, 445, 364 S.E.2d 244 (1988).

In *Pinkard v. Pinkard*, the Court of Appeals held that the trial court did not abuse its discretion in ordering the husband to vacate the marital home pursuant to Section 20-103. 12 Va. App. at 853. However, it is significant that in *Pinkard* the parties had separated physically before the trial court entered its order. In addition, the trial court found that the husband did not maintain the house while in possession of it. These facts matter because the pendente lite order did not facilitate the separation of the spouses. The wife had already moved out of the home before the court ordered that she have exclusive possession of it. Accordingly, the pendente lite order did not contradict the Commonwealth's laws and public policy favoring the institution of marriage.

Under Virginia law, marriage is a status involving the public welfare; it is not merely a contract between two people. Our Supreme Court has described the institution as a relationship among three parties: the husband, the wife, and the Commonwealth. *Cramer v. Commonwealth*, 214 Va. 561, 564-65, 202 S.E.2d 911 (1974). Likewise, the United States Supreme Court has expressed the interest of the states in regulating marriage.

Marriage, as creating the most important relation in life, as having more to do with the morals and civilization of a people than any other institution, has always been subject to the control of the legislature. That body prescribes the age at which parties may contract to marry, the procedure or form essential to constitute marriage, the duties and obligations it creates, its effects on the property rights of both, present and prospective, and the acts which may constitute grounds for its dissolution.

*Maynard v. Hill*, 125 U.S. 190, 205, 31 L. Ed. 654, 8 S. Ct. 723 (1888).

The public policy of the Commonwealth is "to foster and protect marriage, to encourage the parties to live together, and to prevent separation, marriage being the foundation of the family and of society, without which there would be neither civilization nor progress." *Shelton v. Stewart*, 193 Va. 162, 166, 67 S.E.2d 841 (1951). The Commonwealth provides for the regulation of marriage in order to promote "public morality and the moral and physical development of the parties." *Toler v. Oakwood Smokeless Coal Corp.*, 173 Va. 425, 430, 4 S.E.2d 364 (1939). The General Assembly has prescribed exclusive means for either creating or dissolving the marriage relationship. *Cramer v. Commonwealth*, 214 Va. at 564-65. For example, Chapter 2 of Title 20 requires a valid marriage license and proper ceremony for marriage. Chapter 6 stipulates jurisdictional requirements and proper grounds for the dissolution of marriage, whether by annulment or divorce.

Although the General Assembly prescribes means for the dissolution of marriage through court proceedings, the courts of the Commonwealth are not used to facilitate divorce. Our Supreme Court repeatedly has declared void agreements used to facilitate or support divorce because they violate the Commonwealth's public policy to protect the institution of marriage. E.g., *Chattin v. Chattin*, 245 Va. 302, 427 S.E.2d 347 (1993); *Cooley v. Cooley*, 220 Va. 749, 263 S.E.2d 49 (1980); *Capps v. Capps*, 216 Va. 378, 219 S.E.2d 901 (1975); *Ryan v. Griffin*, 199 Va. 891, 894, 103 S.E.2d 240 (1958); *Cumming v. Cumming*, 127 Va. 16, 102 S.E. 572 (1920). The Court has drawn a clear distinction between those agreements and valid post-separation agreements that simply address the parties' rights and interests, such as the distribution of property. *Wallihan v. Hughes*, 196 Va. 117, 82 S.E.2d 553 (1954); see also *Moreland v. Moreland*, 108 Va. 93, 60 S.E. 730 (1908). The latter are based on valid consideration and are created for lawful purposes, after the parties have decided to divorce; the former are illegal and violate the

fundamental public policy of the preservation and promotion of marriage. *Upton v. Ames & Webb, Inc.*, 179 Va. 219, 227, 18 S.E.2d 290 (1942).

In the case at bar, the parties did not separate physically before filing the Bill of Complaint for divorce. There is no evidence of misconduct by either spouse. Now they seek the court's assistance by requesting an order excluding one or the other from the home. This court cannot enter such an order. It would facilitate divorce and thereby violate the law and public policy summarized above.