COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present: Chief Judge Decker, Judges AtLee and Athey
Argued by videoconference


MARY B. GIAQUINTO, N/K/A
  MARY B. LINCOLN

                                                    MEMORANDUM OPINION[*] BY
v.      Record No. 0615-20-1                        JUDGE CLIFFORD L. ATHEY, JR.
                                                         DECEMBER 15, 2020
NICHOLAS A. GIAQUINTO


            FROM THE CIRCUIT COURT OF THE CITY OF VIRGINIA BEACH
                             Stephen C. Mahan, Judge

           Julie A. Currin (W. Ware Morrison, PLC, on briefs), for appellant.

           M. Michelle P. McCracken (Fine, Fine, Legum & McCracken, LLP,
           on brief), for appellee.


       Assigning three errors, appellant Mary B. Giaquinto, n/k/a Mary B. Lincoln ("wife")

appeals from a final decree of divorce ("final decree") entered in the Circuit Court of the City of

Virginia Beach ("trial court"). First, wife contends that "the [trial court] abused its discretion

[by] denying [wife's] repeated requests for a continuance on December 5, 2019." Second, she

contends that "the [trial court] erred in not permitting any of [wife's] evidence of discovery

abuses and/or her documents impacting equitable distribution, asset, and debt determinations."

Third, she contends that "the [trial court's] application of the pretrial order resulted in manifest

injustice for the *pro se* [wife] adequate to mandate reversal and remand."

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

Wife and appellee Nicholas A. Giaquinto ("husband") married on July 21, 2000.  On April 24, 2018, wife filed a complaint for divorce based on cruelty and requested the equitable distribution of all marital property, assets, debts, retirement, and other matters under Code § 20-107.3.  Husband filed an answer and counterclaim, seeking a divorce based on wife's cruelty or, in the alternative, a divorce based on living separate and apart for over one year.

On May 31, 2019, the parties agreed to set the matter for trial on December 5, 2019.  Wife's counsel endorsed the court's pretrial order before being permitted to withdraw from representation in the case.  Wife chose to proceed *pro se*.  The pretrial order advised both husband and wife (collectively, "the parties") of deadlines for filing and exchanging proposed exhibits, pretrial briefs, and exhibit and witness lists.  Wife failed to comply with the deadlines in the pretrial order, which cautioned that "[a]ny exhibit or witness not so identified will not be received in evidence" unless used for rebuttal, impeachment, "or unless the admission of such exhibit or testimony of the witness would cause no surprise or prejudice to the opposing party and the failure to list the exhibits or witness was through inadvertence."  The pretrial order established that "[c]ontinuances of the trial date will only be granted by the court for good cause shown."

On the morning of the trial, wife made an *ore tenus* request for a continuance based on good cause, citing her need for more time to investigate her husband's alleged engagement in identity fraud and hiding funds, an appointment for genetic testing on December 16, 2019, which she later abandoned, and her desire to obtain an attorney despite the passage of six months since

---

[1] Pursuant to familiar appellate principles, the evidence is summarized in the light most favorable to the prevailing party at trial, husband in this matter.  See Niblett v. Niblett, 65 Va. App. 616, 622 (2015).

her former counsel withdrew. Husband objected to continuing the trial and to wife introducing exhibits or witnesses because she failed to comply with the pretrial order.

After reviewing the parties' file, the trial court noted that husband had submitted the pretrial conference brief and an exhibit and witness list, but that wife had not—wife admitted that she failed to file these documents. Wife added, however, that she did not have an attorney and should therefore be allowed to present evidence. In the alternative, wife suggested that a continuance would allow her time to obtain an attorney and "get the right thing done."

The trial court found that wife "had lots of time to obtain an attorney if [she] wanted to do so" and denied her continuance request because good cause for a continuance did not exist. In doing so, the trial court found that wife had engaged in "a series of last-minute attempts to delay or interfere with this proceeding going forward, all of which could have been addressed at a prior occasion and should have been addressed at a prior occasion . . . ." The trial court then ruled that any proposed exhibits not identified on the witness or exhibit list, as previously ordered, would not be permitted.

When the trial court then asked wife if she wished to raise any other pretrial issues, wife responded, "I'd like to just see if we could settle. I, I don't think there's anything to present." Husband subsequently agreed to discuss a settlement with her, and the trial court took a recess to give them that opportunity.

After the recess, counsel for husband told the trial court that she was uncertain whether wife agreed to waive any interest in husband's retirement but that if wife agreed to that, she was prepared to read the agreement into the record. While wife indicated that she did not wish to waive this interest, she emphasized, "I don't care, just settle it, please." The trial court then explained to wife as follows:

I can't . . . require you to agree to anything. And, I don't want you to agree to . . . anything that you don't want to agree to. I want to be clear to you. You are not being forced to agree to anything. And, nobody's pressuring you, at least, nobody from the Court's perspective is pressuring you to do anything that you have any reservations about doing. And, as [a] matter of fact, the Court would not accept an alleged agreement if the Court were under the impression it really was not a free and voluntary act on the part of both parties.

In response to a request to distinguish separate from marital property, the trial court defined the terms and asked whether wife understood the distinction. Instead of responding to that question, wife attempted to negotiate with husband in open court. Whereupon, the trial court explained that the parties would not be permitted to negotiate in open court and took another recess for the parties to further discuss the terms of a potential agreement.

When the parties returned, counsel for husband announced that the parties had reached an agreement and offered to read it into the record. The trial court explained the procedure to the parties, and counsel for husband read the agreement into the record. Husband agreed to its terms and to affirm, ratify, and incorporate such agreement into the final decree.

Wife also assented to the terms of the agreement as recited on the record. When the trial court asked wife whether she agreed to the terms as counsel recited, wife replied without hesitation, "Yes, sir." When the trial court asked wife whether she agreed to affirm, ratify, and incorporate the agreement into the final decree, wife replied, "Yes."

After husband and a witness testified to the grounds of divorce, the trial court granted a no-fault divorce as husband requested, subject to the terms of the agreement read into the record and affirmed by the parties under oath. The trial court entered the final decree on February 26, 2020.

Counsel[2] for wife signed the final decree as seen and objected to for "not conforming with rules and equitable distribution law." The trial court responded in writing that "[n]o objection was previously raised by [wife,] and the Court has not had any opportunity to consider or rule on any purported objections to what was, at the time of [the] hearing, an uncontested divorce based upon an agreement affirmed under oath, on the record, by both parties." Counsel for wife then filed a notice and motion to rehear, which the trial court denied by order dated April 16, 2020. This appeal followed.

STANDARD OF REVIEW

Our standard of review requires us to "'discard the evidence' of the appellant which conflicts, either directly or inferentially, with the evidence presented by the appellee at trial." Congdon v. Congdon, 40 Va. App. 255, 258 (2003) (quoting Wactor v. Commonwealth, 38 Va. App. 375, 380 (2002)).

ANALYSIS

Request for Continuance and Admissibility of Evidence

Wife first assigns error to the trial court's denial of her continuance requests. She also assigns error to the trial court's ruling that any documents not identified on the witness or exhibit list, as previously ordered, would not be allowed as exhibits.

"Following the traditional doctrine of judicial restraint, [appellate courts] 'decide cases on the best and narrowest grounds available.'" Chaney v. Karabaic-Chaney, 71 Va. App. 431, 438 (2020) (quoting Levick v. MacDougall, 294 Va. 283, 302 (2017)). Because waiver is the best and narrowest ground available here, we do not address the merits of wife's first and second assignments of error. By permitting counsel for husband to read a settlement agreement into the

_____

[2] Wife retained her current counsel, Julie A. Currin, on December 12, 2019.

record and then agreeing with the terms of that settlement on the record, wife waived any right to appeal the trial court's rulings that good cause for a continuance did not exist and that any documents not identified on the witness or exhibit list would not be allowed as exhibits.

Notwithstanding the enactment of the equitable distribution statute, parties to a divorce may enter into an agreement regarding their property. See Code § 20-107.3(I) ("Nothing in this section shall be construed to prevent the affirmation, ratification and incorporation in a decree of an agreement between the parties pursuant to . . . [Code §] 20-109.1."). The detailed provisions of Code § 20-109.1 authorize the incorporation of a valid property settlement agreement into a final decree, and Virginia courts recognize and enforce such agreements. See Code § 20-109.1 (authorizing courts to affirm, ratify, and incorporate by reference "any valid agreement between the parties" into the final decree); Cooley v. Cooley, 220 Va. 749, 752 (1980) (finding that such agreements "are favored in the law and such will be enforced unless their illegality is *clear and certain*" (emphasis added)).

While Code § 20-149 instructs that a marital agreement shall generally be "in writing and signed by both parties," Code § 20-155 provides an exception to this requirement:

> If the terms of such agreement are (i) contained in a court order endorsed by counsel or the parties or (ii) recorded and transcribed by a court reporter and affirmed by the parties on the record personally, the agreement is not required to be in writing and is considered to be executed.

When an agreement is "read or recited into the record in the presence of a court reporter and the parties [] specifically and affirmatively manifest their assent to [its] terms on the record," Code § 20-155 is satisfied. Gaffney v. Gaffney, 45 Va. App. 655, 670 (2005). We determine whether wife specifically and affirmatively manifested her assent to those terms by considering her intention, as shown by the reasonable meaning of her words and acts. See Lucy v. Zehmer, 196 Va. 493, 503 (1954).

Here, the reasonable meaning of wife's actions and words manifested her intention to enter into the agreement on the record as permitted by Code §§ 20-107.3(I) and 20-155. Notably, wife expressed her desire to settle and forgo presenting evidence when she stated, "I'd like to just see if we could settle. I, I don't think there's anything to present." Wife openly disagreed with husband's expressed reservations and insisted on trying to settle the matter. It was in this context that husband finally agreed to a settlement discussion with wife. The trial court then provided wife with a recess in which she further discussed the terms of a potential agreement with counsel for husband.

Before wife accepted the agreement on the record, the trial court took great care to ensure that she understood the law and procedure. As demonstrated by her statement, "I don't care, just settle it, please," wife insisted on settling the matter instead of presenting evidence. The trial court then explained to wife that she had the power to decide whether she wanted to accept any agreement. The trial court further explained that it "would not accept an alleged agreement if . . . it really was not a free and voluntary act on the part of both parties." The trial court even offered to take another recess to give wife additional time to discuss a potential settlement. Wife accepted that offer and further negotiated the terms of the agreement with counsel for husband.

After the parties reached an agreement, counsel for husband recited its terms on the record, and the trial court obtained husband's assent. Then, the trial court asked wife whether she agreed to the terms counsel recited, and she replied without hesitation, "Yes, sir." The trial court accepted this agreement as valid. The record shows that wife addressed the trial court whenever she felt the need to do so, yet she never objected to the agreement and allowed the hearing to conclude with this agreement intact.

Accordingly, we find that wife's actions and words objectively manifested her intention to end the litigation by entering into this agreement as permitted by Code §§ 20-107.3(I) and

20-155, and the trial court accepted this agreement under Code § 20-109.1. By agreeing to the settlement on the record, wife waived her ability to appeal the pretrial rulings and appeal this otherwise valid agreement despite her decision to hire counsel after acceptance and despite her refusal to sign the final order before moving to rehear the matter. When counsel for husband recited the agreement into the record in the presence of a court reporter and the parties specifically and affirmatively manifested assent to its terms on the record, these actions satisfied Code § 20-155. We find no evidence in the record of *clear and certain* illegality, so the agreement is valid and enforceable despite wife's subsequent objection.

For all of these reasons, wife waived any right to appeal the pretrial rulings when she objectively manifested her intention to enter into an agreement that the trial court accepted.

<u>The Trial Court's Application of the Pretrial Order</u>

Wife also assigns error to "the [trial court's] application of the pretrial order," which she claims "resulted in manifest injustice for the *pro se* [wife] adequate to mandate reversal and remand." In support, she claims that the trial court's enforcement of the pretrial order deadline for her exhibit and witness list "created oppressive circumstances and thus, an unconscionable and inequitable agreement." We disagree.

Because we "decide cases 'on the best and narrowest grounds available,'" <u>Chaney</u>, 71 Va. App. at 438 (quoting <u>Levick</u>, 294 Va. at 302), and wife failed to preserve the third assignment of error, we do not address it on the merits.

Under Rule 5A:18, "[n]o ruling of the trial court . . . will be considered as a basis for reversal unless an objection was stated with reasonable certainty at the time of the ruling, except for good cause shown or to enable th[is] Court . . . to attain the ends of justice." "The bare assertion that an award is 'contrary to the law and the evidence' is not sufficient to constitute a question to be ruled upon on appeal." <u>Konefal v. Konefal</u>, 18 Va. App. 612, 615 (1994) (quoting

Rule 5A:18). Furthermore, "endorsing a decree 'seen and objected to' does not preserve an issue for appeal unless the record further reveals that the issue was properly raised for consideration by the trial court." Id. (quoting Twardy v. Twardy, 14 Va. App. 651, 657 (1992) (*en banc*)). Rules requiring specific and contemporaneous objections "promote orderly and efficient justice and are to be strictly enforced except where the error has resulted in manifest injustice." Redman v. Commonwealth, 25 Va. App. 215, 220 (1997) (quoting Brown v. Commonwealth, 8 Va. App. 126, 131 (1989)).

Here, wife argues that the agreement was unconscionable for the first time on appeal. When wife entered into the agreement with husband, she made no specific, contemporaneous objection as required by Rule 5A:18. Endorsing the final decree as seen and objected to for "not conforming with rules and equitable distribution law" was insufficient to preserve the issue because this is a bare assertion that the award is contrary to the law. Such an endorsement neither allowed husband nor the trial court an opportunity to intelligently consider her argument that the agreement was unconscionable. Thus, wife cannot now complain that the agreement is unconscionable because she failed to preserve this argument under Rule 5A:18.

### Attorney's Fees

Finally, husband requests an award of his costs and attorney's fees incurred on appeal. Whether we make such an award on appeal depends on the equities of the case and is discretionary. See Rule 5A:30(b). After reviewing the record, the assignments of error, and the parties' arguments, we deny husband's request for attorney's fees.

### CONCLUSION

For the foregoing reasons, we affirm the trial court's judgment.

Affirmed.