UNPUBLISHED

COURT OF APPEALS OF VIRGINIA


Present:   Judges Malveaux, Raphael and Senior Judge Petty
Argued at Richmond, Virginia


BENJAMIN J. BROWN

MEMORANDUM OPINION[*] BY
v.      Record No. 0041-23-2        JUDGE WILLIAM G. PETTY
APRIL 9, 2024
STEPHANIE N. BROWN


FROM THE CIRCUIT COURT OF KING GEORGE COUNTY
Herbert M. Hewitt, Judge

Lauren K. Grant (Stiles Ewing Powers, on briefs), for appellant.

Benjamin R. Rand (Blackburn, Conte, Schilling & Click, P.C., on brief), for appellee.


Benjamin J. Brown (husband) appeals a final order of divorce, challenging several aspects

of the equitable distribution award.  Husband argues that the circuit court erred by finding the

parties' premarital agreement requires him to reimburse Stephanie N. Brown (wife) for one-half of

the reduction of his student loan balance and holding that the premarital agreement "overrode"

Texas law.  Husband further asserts that the circuit court erred by finding that the premarital

agreement required him to reimburse wife $20,527 for an "underpaid tax liability."  Finally,

husband contends that the circuit court erred by ruling that he was "not entitled to any portion" of

wife's Chesterfield Oral Surgery 401(k) account.  For the reasons stated below, we affirm the circuit

court's judgment in part, reverse in part, and remand this case to the circuit court for further

proceedings consistent with this opinion.

---

[*] This opinion is not designated for publication.  See Code § 17.1-413(A).

BACKGROUND[1]

Before the parties married, they lived in Texas and entered into a premarital agreement on July 30, 2016. Wife disclosed certain assets she owned, while husband did not attach a list of his property to the premarital agreement. The premarital agreement defined and provided for the disposition of the parties' separate and community property and obligations. On October 15, 2016, the parties married. Following their marriage, the parties endorsed an agreement ratifying the premarital agreement.

Husband and wife subsequently moved to Virginia and separated on November 9, 2020. Wife filed a complaint for divorce, asking the circuit court to divide their marital property according to the terms of the premarital agreement. Husband filed an answer and counterclaim, to which wife filed an answer.

Before the equitable distribution hearing, the parties agreed to retain a neutral forensic account evaluator, who prepared an asset list, a summary of husband's student loans, a retirement and investment accounts list, and a tax analysis; the parties submitted the documents as joint exhibits at trial. The parties agreed that their premarital agreement governed the division of their property but disagreed over how the agreement applied to husband's student loans, his income and tax liability, and wife's Chesterfield Oral Surgery 401(k) account.

After hearing testimony and reviewing the parties' written closing arguments, the circuit court issued a letter opinion. As pertinent herein, the circuit court found that wife was entitled to reimbursement for one-half of the reduction of husband's student loan balance and $20,527 for funds she paid toward husband's tax liability. The circuit court also found that husband was not entitled to any portion of wife's Chesterfield Oral Surgery 401(k) account. On December 13, 2022,

---

[1] Portions of the record in this case were sealed. We unseal only those facts expressly mentioned in this opinion; the remainder of the sealed record remains under seal. *Mintbrook Devs., LLC v. Groundscapes, LLC*, 76 Va. App. 279, 283 n.1 (2022).

the circuit court entered a final decree of divorce, which incorporated the premarital agreement. Husband appeals.

## ANALYSIS

"[T]his Court reviews the circuit court's 'interpretation of the parties' agreement *de novo*.'" *Price v. Peek*, 72 Va. App. 640, 646 (2020) (quoting *Jones v. Gates*, 68 Va. App. 100, 105 (2017)). An appellate court is "not bound by the trial court's conclusions as to the construction of the disputed provisions." *Jones*, 68 Va. App. at 105 (quoting *Smith v. Smith*, 3 Va. App. 510, 513 (1986)). In interpreting an agreement, "the court must determine 'the intent of the parties and the meaning of the language'" by examining "'the entire instrument, giving full effect to the words the parties actually used.'" *Price*, 72 Va. App. at 646 (quoting *Jones*, 68 Va. App. at 106).

### Student loans

Husband is an emergency room physician. There is no dispute that husband incurred student loans before the parties' marriage. Husband paid his loans with his income earned during the marriage. Husband argues that the circuit court erred by finding that the premarital agreement required him to reimburse wife for one-half of the reduction of his student loan balance and that their agreement "overrode" Texas law.

The parties had agreed that Texas substantive law applied to their agreement. Texas law provides that a court "may not recognize a marital estate's claim for reimbursement for . . . a student loan owed by a spouse." Tex. Fam. Code Ann. § 3.409(5). Relying on § 3.409(5), husband argues that the circuit court erred in ordering him to reimburse the marital estate for moneys used to pay his medical school debt. Wife, however, argues that husband should reimburse the marital estate because he used community property to pay his separate debt, which the parties had agreed would be paid with their separate property. The circuit court found that the parties had agreed that husband was responsible for repaying his student loans from his separate property.

In determining the parties' intent and meaning, the circuit court had to examine "the entire instrument." *Price*, 72 Va. App. at 646 (quoting *Jones*, 68 Va. App. at 106); *see also Worsham v. Worsham*, 74 Va. App. 151, 167 (2022) (The "contract must be construed as a whole and the intention of the parties is to be collected from the entire instrument and not from detached portions." (quoting *Sweely Holdings, LLC v. SunTrust Bank*, 296 Va. 367, 376-77 (2018))).  The question presented here is whether the parties' premarital agreement contracted around the prohibition in § 3.409(5).  Texas law allows the parties to contract around the prohibition in § 3.409(5).  *See* Tex. Fam Code § 3.410 ("A premarital or marital property agreement . . . that satisfies the requirements of Chapter 4 is effective to waive, release, assign, or partition a claim for economic contribution, reimbursement, or both . . . .").

Paragraph 4.02 of the premarital agreement provided that "[a]ll other liabilities and obligations presently owned by [husband], of every kind and character, are the sole liabilities and obligations of [husband], which may be satisfied and paid from [husband's] separate property." Paragraph 4.02 further provided that the "parties acknowledge that a marital property reimbursement claim *may arise* if community property or [wife's] separate property is used to pay [husband's] existing liabilities."  (Emphasis added).  Under husband's theory of the case, a marital reimbursement claim *can't arise* in the context of paying down student debt.  But *can't arise* would be inconsistent with *may arise* as used in paragraph 4.02.  Thus, the circuit court did not err in finding that the parties "overrode" Texas law by contracting around the prohibition expressed in Texas Family Code § 3.409(5).

Furthermore, Texas Family Code § 4.003(8) allows the parties to contract with respect to "any other matter, including their personal rights and obligations, not in violation of public policy or

a statute imposing a criminal penalty."[2]  "The legislature and the people of Texas have made the public policy determination that premarital agreements should be enforced."  *Beck v. Beck*, 814 S.W.2d 745, 749 (Tex. 1991); *see also Matter of Marriage of I.C. & Q.C.*, 551 S.W.3d 119, 124 (Tex. 2018) (same).  Similarly, in Virginia, "the general rule is that agreements between husband and wife relating to the adjustment of property rights, even though in contemplation of divorce, are not violative of established public policy unless collusive or made to facilitate a separation or to aid in procuring a divorce."  *Capps v. Capps*, 216 Va. 378, 380 (1975); *see also Lehman v. Lehman*, 38 Va. App. 598, 604 (2002) ("The presumption is against finding contracts void on public policy grounds.").  Here, the parties' premarital agreement, including paragraph 4.02, does not violate public policy.  Considering the parties' agreement as a whole, the circuit court did not err in determining that the parties intended for husband to be solely responsible for his student loans and ordering him to reimburse wife for one-half of his student loan balance.

## Tax liability

Husband argues that the circuit court erred by ruling that the premarital agreement required him to reimburse wife $20,527 for an underpaid tax liability.  The parties filed joint tax returns in 2016 and 2017.  The neutral forensic account evaluator reported that husband had not withheld enough from his earnings during those years and owed $10,688 in 2016 and $30,366 in 2017.[3]  Wife paid the taxes owed from her account ending in 6653, which she owned before the marriage.

---

[2] The language in Texas Family Code § 4.003(8) mirrors the language in Code § 20-150(8).

[3] Wife argues that the tax liability arose when husband rolled money from a traditional IRA to a Roth IRA.  Husband testified that the rollover occurred in 2018, when the parties did not file joint tax returns, and he paid the taxes due because of the rollover.  The neutral forensic accountant indicated that husband failed to withhold sufficient funds from his W-2 income.  The circuit court found that the tax liability arose from income taxes, not taxes from an IRA rollover.  Wife does not challenge that finding on appeal; therefore, we do not consider wife's argument that the tax liability arose from an IRA rollover.

Husband contends that the account ending in 6653 contained community property funds; therefore, he was not required to reimburse wife for her payments toward the tax liability.

As noted above, the parties had agreed in paragraph 2.02 of the premarital agreement that their wages and salary were community property. In paragraph 5.01(D) of the premarital agreement, the parties agreed that "[t]ax liability on community property income shall be paid using community property funds." Husband concedes that if wife had used her separate property to pay the tax liability, he would be responsible for reimbursing her half of the payments under the premarital agreement. According to husband, however, wife used community funds to pay the tax liability; consequently, the circuit court erred in ordering him to reimburse her. We agree.

The evidence established, and the circuit court found, that wife deposited "much of her employment earnings, which [were] community property," into the bank account ending in 6653. Because wife's earnings were community property, the bank account included community funds, which were then used to pay the tax liability. The circuit court found that "[e]ven though the parties' income earned through employment [was] not equal[,] they have agreed that each will be obligated for the taxes on the total employment income half and half." That finding was erroneous. The premarital agreement did not specify that the parties would divide the tax liability equally; rather paragraph 5.01(A) stated that the "parties shall each be liable for tax on community property income as provided by Federal law and Texas law, including innocent spouse provisions of Federal law." As discussed above, a court cannot add language to an agreement. *Id.* Here, the premarital agreement stated only that community funds were to be used to pay the tax liability on community property income. The evidence proved that funds in the account ending in 6653 included community property and were used to pay the joint tax liability arising from husband not withholding enough taxes from his income. Therefore, we reverse the circuit court's ruling that

- 6 -

required husband to reimburse wife $20,527, and we remand the matter for further proceedings consistent with this opinion.

Chesterfield Oral Surgery 401(k) account

Husband argues that the circuit court erred by finding that he was not entitled to any portion of wife's Chesterfield Oral Surgery 401(k) account. He asserts that wife worked at the practice and received income from it during the marriage. Husband further contends that deposits were added to the account during the marriage, and those deposits were community property. Husband claims that he was entitled to one-half of the deposits to the account based on the language of paragraph 2.02, which defined "[d]eferred compensation attributable to employment during marriage" as community property.

In 1990, wife's parents opened Chesterfield Oral Surgery and a "Family Limited Partnership and some other entities under advisement from a financial person." Based on the recommendations of professionals, wife's parents started a 401(k) for wife when she was a child.[4] Since then, Chesterfield Oral Surgery regularly contributed to the 401(k) account in wife's name.

When the parties entered their premarital agreement, wife disclosed her interest in the Chesterfield Oral Surgery 401(k) account, which was defined as her separate property under the parties' agreement. Paragraphs 3.01 and 3.03 further clarified that the separate properties wife owned would "remain" her separate property, and any "mutations, changes, and increases in, and income or other property arising from" said properties would remain wife's "sole and separate property." Paragraph 7.01 provided that in the event of a divorce, wife would be awarded "all property described in this agreement as being her separate property." Husband further agreed to "release all interests or claims he may have in such property." After the parties married, they

---

[4] The Court accepts the 401(k) account as it was addressed by the parties and offers no opinion as to whether its creation or funding conforms with the requirements of the Internal Revenue Code.

executed another agreement confirming that "all income and property arising during marriage" from separate property remains that person's separate property.

The circuit court found that husband was not entitled to any portion of wife's Chesterfield Oral Surgery 401(k) account because "no community property was deposited in that account" and wife "did not receive employment income from Chesterfield Oral Surgery." The evidence supports the circuit court's findings. Wife's parents testified that wife did not work for Chesterfield Oral Surgery. Wife also confirmed that she was not employed by Chesterfield Oral Surgery and did not receive income from the company. Although she knew that her parents funded the 401(k) account for her, she testified that she had not seen "anything" regarding her 401(k) and referred all questions about the account to her father. Wife's father acknowledged that wife had received "passive income" from Chesterfield Oral Surgery, with "[m]ost" of it going toward taxes.

Husband countered that wife "helped out" at Chesterfield Oral Surgery during the COVID-19 pandemic by purchasing protective equipment for her father and sanitizing the office. The record includes an exhibit listing wife's adjusted gross income for tax years 2018, 2019, and 2020, with the first two pages of wife's tax return for those years. There is no supporting documentation to verify wife's income and no accompanying W-2 from Chesterfield Oral Surgery. Husband also offered into evidence a document from the Internal Revenue Service (IRS) regarding the parties' 2017 tax return.[5] The IRS record indicates that in 2017, Chesterfield Oral Surgery had withheld $4,309 in social security for wife.[6] The record offers no further information about the IRS document or wife's income. For the first time on appeal, husband asserts that the IRS document

---

[5] Husband offered the exhibit into evidence to corroborate his testimony about "a mistake" that the accountant made in filing their 2017 joint tax return and that he paid the taxes due with his earnings.

[6] The document also reflects that Fredericksburg Regional Oral Surgery, which has the same address as Chesterfield Oral Surgery, withheld social security in 2017. Husband does not suggest that wife worked at Fredericksburg Regional Oral Surgery.

supports his argument that wife was employed by Chesterfield Oral Surgery. "The Court of Appeals will not consider an argument on appeal which was not presented to the trial court." *Tackett v. Arlington Cnty. Dep't of Hum. Servs.*, 62 Va. App. 296, 315 (2013) (quoting *Ohree v. Commonwealth*, 26 Va. App. 299, 308 (1998)).

The circuit court had the opportunity to see and hear the witnesses. Wife's father confirmed that wife received "passive income" from Chesterfield Oral Surgery for tax purposes, but he, wife's mother, and wife all testified that wife did not work there. The circuit court credited their testimony. "It is well established that the trier of fact ascertains a witness' credibility, determines the weight to be given to their testimony, and has the discretion to accept or reject any of the witness' testimony." *Sobol v. Sobol*, 74 Va. App. 252, 272 (2022) (quoting *Anderson v. Anderson*, 29 Va. App. 673, 686 (1999)). "This Court is bound by the credibility findings of the circuit court." *Tackett*, 62 Va. App. at 339.

The premarital agreement listed the 401(k) account as wife's separate property and provided that it would remain her separate property. Paragraph 2.02 defining deferred compensation as community property did not apply because the 401(k) account was not "attributable to employment" during the marriage. Considering the totality of the record and the provisions of the premarital agreement, the circuit court correctly found that husband was not entitled to any part of wife's 401(k) from Chesterfield Oral Surgery.

Appellate attorney fees and costs

Wife requested an award of her attorney fees and costs incurred on appeal. "Whether a contract entitles the prevailing party to attorney fees is a question of law that we review 'de novo.'" *Worsham*, 74 Va. App. at 178 (quoting *Online Res. Corp. v. Lawlor*, 285 Va. 40, 61 (2013)). Rule 5A:30(b)(2)(B) requires us to look to the "terms of a contract or stipulation" between the parties to determine whether to award fees. *See Allen v. Allen*, 66 Va. App. 586, 603

(2016) (considering the parties' post-nuptial agreement to determine whether to award appellate attorney fees). If an agreement "contains a provision awarding attorney's fees, the court must follow the terms of that agreement, to the extent allowable by law." *Jones*, 68 Va. App. at 106.

Paragraph 11.07 of the premarital agreement provided that a "party seeking enforcement, if successful, shall be entitled to recover reasonable attorney's fees and other necessary costs from the other party" and a party who "successfully defend[s] his or her rights" under the premarital agreement was entitled to an award for "reasonable and necessary attorney's fees and litigation expenses." Because both parties successfully enforced and defended portions of the premarital agreement, we decline to award any attorney fees and costs incurred on appeal.

CONCLUSION

For the reasons discussed above, we affirm the circuit court's rulings regarding husband's student loans and wife's interest in her Chesterfield Oral Surgery 401(k) account. We reverse the circuit court's ruling regarding the tax liability and remand for further proceedings consistent with this opinion.

*Affirmed in part, reversed in part, and remanded*.